INTERNATIONAL PAPER COMPANY *v.* WILSON

No. 42198 April 9, 1962 139 So. 2d 644

*Gwin & Gwin,* Natchez, for appellant.

661

*Johnson & Johnson, R. L. Netterville,* Natchez, for appellee.

KYLE, J.

This case is before us on appeal by the International Paper Company, employer, from a judgment of the Circuit Court of Adams County affirming an order of the Mississippi Workmen's Compensation Commission awarding to Edward R. Wilson, claimant, medical benefits and compensation for temporary total disability and temporary partial disability, under the Mississippi Workmen's Compensation Law, for an injury sustained by the claimant on October 21, 1956, while engaged in

the performance of his duties as an employee of the appellant. This is the second time the case has been before this Court on appeal. See Wilson v. International Paper Company (1959), 235 Miss. 153, 108 So. 2d 554.

The record on the first appeal, which by express stipulation of the parties has been made a part of the record on this appeal, showed that the International Paper Company, appellant on this appeal, was engaged in the business of manufacturing paper and related products from pulpwood, and that the claimant, appellee on this appeal, at the time of his alleged injury on October 21, 1957, was employed by the appellant as a helper for the cook in charge of the operation of a cooking vat where small chips of pulpwood were treated with chemicals and heat and hot water until they were converted into a thick pulp. The claimant testified during the first hearing on February 14, 1957, that he experienced a pain in his back while attempting to open a valve which regulated the flow of the pulpwood materials into the cooking vat, that the pain subsided after a short time, and on the following day he returned to work, but about an hour and a half later the pain recurred and he reported to his foreman and the attendant in charge of the first aid station that he had a pain in his back and down his leg and he had to go to a doctor; that he was carried to the Natchez General Hospital where he remained several days, and was examined and treated by Doctors Gandy, Graves, Kisner and Phillips, and was then referred to Dr. Charles Neill in Jackson; that he was unable to work thereafter and had been an invalid since October 22, 1956.

The testimony of Dr. Howard Kisner, Dr. Thomas Howard Gandy and Dr. Jack Phillips, taken during the hearing before the attorney-referee prior to the first appeal, was summarized by the attorney-referee as follows:

Dr. Howard Kisner testified that he examined the claimant on October 22, 1956, for a complaint of severe pain in his side; that no history of any accident was given to him at that time, but on October 23, 1956, the claimant's wife told him of the injury to her husband's back, and that the claimant had a history of back pain while in bed with mumps some two or three weeks prior to his admission to the hospital. Dr. Thomas Howard Gandy testified that he examined the claimant on October 22, 1956, along with Dr. Kisner; that he had treated the claimant for a complication of the mumps, and on October 2, 1956, the claimant had complained of low back pain; that in his opinion the claimant had fully recovered from the effects of the mumps on October 22, 1956, and that the first he knew of an accident was when he received a letter from the claimant's attorney. Dr. Jack Phillips testified that he could find no objective reason for the condition of the claimant, but that he felt there was definitely something wrong with him.

The deposition of Dr. Dean H. Echols, of Ochsner Clinic in New Orleans, Louisiana, which appeared in the record on the first appeal, shows that the claimant was examined by Dr. Echols and other doctors at the clinic in February 1957, and in his deposition the doctor stated: "We found very little physically wrong with this man, except deformities of the hands and fingers from previous injuries, a minor congenital variation from normal in his lower lumbar spine, and various signs and symptoms of psychoneurosis." The diagnosis of Dr. Echols at that time was as follows: "It was my personal opinion that Mr. Wilson had sustained a low back strain as the result of twisting his back while turning a valve on October 21, 1956, and that he had experienced an emotionally disturbing impairment of the circulation of his lower extremity while in the hospital, and that most of his complaint and disability were due to these emotional disturbances * * *. When he left our

hospital on 3-7-57, it was my personal opinion that he was unable to work because of emotional disturbances, not because of physical injury or disease."

The deposition of Dr. John Moosey of Ochsner Clinic stated findings as follows: "I found no significant evidence of neurological disease. I felt that his complaints of weakness in his legs and the other symptoms of which he complained, due to conversion hysteria. * * * I believe there is something significant about the fact that this man's injuries in the past occurred on the job. Have I made myself clear? I can say that there is some significance in the episode of pain in the back and the mumps. It is of greater signifcance that he reports 'on the job' injuries from working for different companies." The diagnosis of Dr. Harold Frank Bolding, a psychiatrist at Ochsner Clinic, was as follows: "I found him functionally incapacitated, and my diagnosis was passive dependent personality. I thought that the weakness that he had experienced was largely on a conversion basis." As to whether there was a causal relation between the claimant's alleged back injury and the claimant's functional incapacity referred to, the doctor stated: "There is about 50% possibility that if he was working and this happened on the job, it would have contributed to his present condition * * *."

Edward Lee Mile, the employee in charge of the operation of the cooking vat at the time of the claimant's alleged injury, and Mrs. Robbie Powell Mayfield, the nurse in charge of the employer's first aid station at the time of the claimant's alleged injury, were called to testify as witnesses for the employer. Both witnesses testified that, when the claimant left his work on October 22, 1956, he told them that his back was hurting and he thought he would have to go home, and that was all that he said.

The record on the first appeal showed that at the conclusion of the evidence, the attorney-referee was of

the opinion that the claimant had failed to establish by a preponderance of the evidence a causal connection of his present condition and any accidental injury arising out of and in the course of his employment, and the attorney-referee entered an order denying the claim. The full Commission, on review, by an order dated January 2, 1958, affirmed the decision and order of the attorney-referee, and the circuit court on appeal entered a judgment affirming the order of the Commission. From that judgment the claimant prosecuted an appeal to this Court, and on February 2, 1959, this Court reversed the judgment of the circuit court and the order of the Commission and entered a judgment in favor of the claimant.

In its opinion in that case the Court said: "The medical proof in this case is undisputed that the claimant is totally disabled and the mere fact that the Natchez doctors were unable to make a definite diagnosis of his trouble was no reason for rejecting the claim, and there was no substantial evidence to support the opinion of the attorney-referee, the full Commission, and the circuit court. Since there is no substantial dispute in any of the testimony, medical or otherwise, we are of the opinion that the appellant, on the record in this case, is entitled to a judgment against the appellee for temporary total disability * * *."

The record that we have before us on this appeal shows that, upon remand of the cause to the Commission, the claimant on March 27, 1959, filed with the Commission a petition for an order directing the employer to make payments for temporary total disability and other benefits, with interest and a 20 percent penalty as provided by the statute; and on May 11, 1959, the claimant filed an amendment to his petition asking for interest and penalty and immediate payment of compensation and hospital and medical bills, for which payment had been demanded. A hearing was ordered by

the attorney-referee; and on June 1, 1959, the hearing was begun. At the hearing on June 1, 1959, the claimant's attorney offered in evidence the claimant's hospital and medical bills, and the claimant was then called to testify as a witness in his own behalf. The claimant testified that he was still suffering from pain in his back and down his right leg, just as he reported to the nurse and foreman of the International Paper Company the afternoon he left his job on October 22, 1956, and that his physical condition had not changed since the last hearing. He stated, however, that he had gone to work in October 1958 as night watchman or night clerk at the Shamrock Motel in Vidalia, Louisiana, and that his salary was $35 per week. He stated that he had tried to get the personnel manager of International Paper Company, his former employer, to put him back on his payroll, but the personnel manager told him that he was not able to do their work. The claimant stated that he had been back to Ochsner Foundation Hospital in March 1959 for further examination and treatment; that Dr. Dean H. Echols advised him that they would check him, but they would not treat him until his last bill was paid; that he remained in the hospital seven days; that Dr. Echols treated him during that period of time, and other doctors were also brought into the case. The claimant stated that he then went to Ville Platte, Louisiana, and consulted Dr. R. E. Dupree. The claimant identified a bill for $261.85 which he had received from Dr. Dupree's clinic and hospital, and which he had paid with money borrowed from his sister-in-law.

The claimant's wife, Mrs. Edward R. Wilson, testified that the claimant still had pain in his back and in his legs; that he was extremely nervous and was not able to go back to work, but he worked at the little job he had over there in Vidalia because he needed the money. Mrs. Wilson stated that she went to Ochsner Foundation Hospital with her husband in March of

1959. They were told at the hospital that the bills for Mr. Wilson's first examination and treatment had not been paid, and that she and her husband would have to pay those bills before he could have treatment. Mrs. Wilson stated that her husband had made demand through his attorney on the International Paper Company for payment of the Ochsner Foundation Hospital bill and other hospital bills. She was then questioned at length by the claimant's attorney about hospital and medical bills and expenses which had not been paid. Marshal R. Johnston, Sr., Manager of Shamrock Motel in Vidalia, Louisiana, testified concerning Wilson's employment as night watchman or night clerk at the motel and the nature of the duties performed by him at the motel. He stated that Wilson's base pay was $35 per week for 48 hours. Johnston stated that he could see that the claimant was physically handicapped, but he did not know the extent of his physical disability. The claimant offered no medical evidence on the second hearing.

At the conclusion of the claimant's evidence on June 4, 1959, the attorney-referee announced that the employer, as a condition precedent to its right to proceed with the hearing, would be required to pay compensation for temporary total disability from the date of the claimant's injury until the date of the award by the full Commission dated January 2, 1958, and an order was entered to that effect. The ruling was made under the authority of Jackson Ready Mix Concrete v. Young, 236 Miss. 550, 111 So. 2d 255. The employer thereupon requested an appeal from the ruling of the attorney-referee to the full Commission. The request was granted, and on January 4, 1960, the full Commission sustained the order of the attorney-referee. Compensation was thereafter paid to the claimant for temporary total disability from October 22, 1956, through January 2, 1958, pursuant to the ruling of the attorney-referee and

the order of the Commission. The second hearing was then resumed on March 8, 1960, and additional testimony was offered on behalf of the claimant, including testimony relating to medical expenses incurred from October 22, 1956 to June 4, 1959, in the amount of $2,-696.70. On March 14, 1960, upon motion of the employer, a commission was issued to take the depositions of Dr. Harold Bolding and Dr. Dean H. Echols, of the Ochsner Clinic in New Orleans.

The hearing was again resumed on May 31, 1960, and at that time the employer introduced in evidence the depositions of Dr. Bolding and Dr. Echols, which had been taken before a Notary Public in New Orleans on March 14, 1960. Both witnesses had testified for the claimant during the first hearing in 1957.

Dr. Bolding testified that his specialty at the Ochsner Clinic was psychiatry; and that he had examined the claimant on March 7, 1957, and again on February 25, 1959; that in the conduct of his examination of the claimant, he had the benefit of other professional examinations by medical specialists in Internal Medicine, Neurology and Neuro Surgery, and Orthopedics associated with the clinic; and that ''Each examining specialist concluded that Edward Wilson's present disability was not an outcome of any illness or injury that fell within the province of his specialty.'' The doctor stated that his psychiatric diagnosis of the appellant was: Personality disorder, passive, aggressive personality; that the claimant had suffered from this condition somewhere in early adolescence or before; that without specific psychiatric treatment it was probable that the claimant would continue to have some impairment in function due to that condition; and that his recommendations since the first consultation had been for the claimant to settle his claim and seek psychiatric treatment. The doctor was asked: ''Q. What is your opinion as to the cause and effect relationship between the

physical injury of October 21, 1956, as contained in Mr. Wilson's history, and his condition when you last examined him?" His answer was: "A. In my opinion, the physical injury of October 21, 1956, was not contributing to his condition when I last saw him, and that his condition was being perpetuated by the psychological disturbance (personality disorder) * * * mentioned in Question Seven." The doctor was asked: "Q. If the neurosis of Mr. Wilson antedates the injury, did the injury aggravate, incite or erupt the neurosis? Or, would the neurosis have erupted of itself without any injury?" His answer was: "A. In my opinion, the neurosis would have erupted of itself, without any injury." The doctor then stated, "My general opinion is that any sufferer from a chronic neurosis or chronic neurotic condition may decompensate in time from an 'A-symptomatic' state to a 'symtomatic state', and that when they reach decompensation some life event is often focused on to explain or rationalize the change that has taken place."

On cross-examination by the claimant's attorney the doctor was asked the following question: "Q. As remote as it may be, 'within reasonable probability' did or did not the injury of October 21, 1956, have some influence — remote as it may be — on triggering or motivating to some extent his present state of mind and condition?" The doctor's answer was: "A. The injury was an event in Mr. Wilson's life which he claims brought about his present incapacity. Therefore Mr. Wilson chooses to attribute considerable importance to this injury. * * * It does not necessarily have any influence on his condition. It has an influence on the way he rationalizes his condition."

Dr. Dean H. Echols, head of the Neuro Surgery Department of Ochsner Clinic and chief of Neuro Surgery at the Ochsner Foundation Hospital, in answer to interrogatories propounded to him on March 14, 1960, tes-

tified that the claimant was his patient at the Foundation Hospital from February 28, 1957, until March 7, 1957, and he had seen him again on February 12, 1959; that during his stay in the Foundation Hospital in 1957, the claimant underwent a complete physical and neurological examination by members of the staff of the hospital, and he personally sat at the patient's bedside for nearly an hour and obtained and recorded his history in great detail. The doctor stated that, after his long interview with the patient on March 2, 1957, it was his opinion that the claimant probably had a low back pain due to straining of ligaments and muscles on October 21, 1956; that the claimant had experienced impaired circulation to the lower extremities on the sixth day after the injury as the result of an abnormal posture in the bed, and that most of his troubles were on an emotional basis. The doctor gave a summary of the diagnosis made by members of the hospital staff, as follows: (1) Low back pain due to straining of ligaments and muscles; (2) temporary impairment of the circulation of the lower extremities six days after the injury of October 21, 1956; and (3) psychoneurosis.

The doctor then stated that it was his opinion that the background in a psychoneurosis develops gradually during infancy and childhood, and becomes manifested later in life; that in this instance the patient had undoubtedly been psychoneurotic for many years. The doctor was asked: "Q. What is your opinion as to the duration in the future of the condition which you diagnose?" His answer was: "A. I personally believe Mr. Wilson will continue to be psychoneurotic for many years, regardless of whether or not his claims are settled favorably from his point of view." The doctor was then asked: "Q. What is your opinion as to the cause and effect relationship between the physical injury of October 21, 1956, as contained in Mr. Wilson's history, and his condition when you last examined him?" His

answer was: "A. It is my opinion that Mr. Wilson was psychoneurotic prior to the injury of October 21, 1956. It is also my opinion that the injury did not cause, precipitate, or aggravate the psychoneurosis. The way I feel about it is that his subconscious mind, for reasons of its own, simply seized on a minor accident as an excuse to express itself in pain and other physical symptoms." On cross-examination, Dr. Echols again stated: "It is my opinion that the accident did not trigger his psychoneurosis into producing a new set of symptoms, and that the relation between the new set of symptoms and the accident was essentially coincidental. At most, I could only repeat that his subconscious mind might have seized on that minor accident as an excuse to express itself in a new way. * * * I suspect that the subconscious mind was, prior to the accident, constantly looking for excuses to produce new and different symptoms, and that the accident in question simply was an excuse—a new excuse to benefit itself with a new set of symptoms." The doctor was of the opinion that had the related accident of October 21, 1956, *not* occurred the psychoneurosis would have manifested itself anyway.

At the conclusion of the hearing, the attorney-referee found that compensation had been paid for temporary total disability from October 22, 1956, through January 2, 1958; that the evidence showed that the claimant was still disabled; and that the claimant had not reached maximum recovery from medical treatment. The attorney-referee, therefore, ordered that the employer pay the claimant's medical bills as listed in the total amount of $2,696.70, and in addition thereto all medical bills which had accrued subsequent to June 14, 1959, and that the employer furnish further medical benefits, as provided by the Mississippi Workmen's Compensation Act. It was further ordered that the employer pay the claimant compensation for temporary total disability from January 2, 1958, until October 15, 1958, and for tempo-

rary partial disability thereafter until such time as his condition becomes static, subject to the limitations of the Mississippi Workmen's Compensation Act, all at the rate of $25 per week, plus an additional ten percentum as provided by statute.

The order of the attorney-referee was entered on June 24, 1960. The employer filed a petition for review by the full Commission, and the claimant filed a cross-petition assigning as errors the failure of the attorney-referee to provide for "the ten percent plus the twenty percent penalty" and the failure of the attorney-referee to require the payment of six percent interest on the unpaid installments of compensation from the due date of each installment. The Commission by an order dated September 9, 1960, affirmed the order of the attorney-referee; and the circuit court on appeal affirmed the order of the Commission. From that judgment the appellant, International Paper Company, has prosecuted this appeal.

The appellant's attorneys argue two main points as grounds for reversal of the order of the Commission and the judgment of the circuit court:

(1) That the evidence taken in the second hearing clearly shows that the physical disability of the claimant proximately resulting from his injury of October 21, 1956, was of short duration and ended prior to January 2, 1958, and that any incapacity that the appellee may have suffered since that time has been due to a neurosis not in any way connected with the injury; and

(2) That the award of compensation to the claimant for incapacity suffered since January 2, 1958, is in law erroneous for the reason that such award was not supported by medical findings, as required by Section 1, Subsection (9) of Chapter 276, Laws of 1960 (Sec. 6998-02, Miss. Code of 1942, Rec.).

The appellant's attorneys say in support of their first assignment of error that the testimony established undisputedly that the claimant had suffered from a severe and incurable neurosis for many years prior to the minor accident of October 21, 1956; that the evidence clearly shows that the claimant had completely recovered from his physical injury arising out of his employment at the time of the second hearing; and that the sole cause of the claimant's incapacity at the time of the second hearing was his severe neurosis, which was neither aggravated nor incited by the incident of October 21, 1956, or otherwise causally related to that incident.

The appellee's attorneys, in answer to the appellant's argument on that point, say that the question of causal relationship was determined by this Court on the first appeal; that the judgment rendered by this Court on February 2, 1959, is res judicata; and that the only matters to be determined by the attorney-referee and the Commission on the second hearing were the extent and duration of the claimant's disability and the questions as to the employer's liability for the payment of medical expenses and the statutory penalties.

We think there is no merit in the appellee's contention that the judgment of this Court on the first appeal is res judicata of the issues presented on the second appeal. The only point decided by this Court on the first appeal was that the proof in the record on that appeal was sufficient to show that the claimant had sustained an injury in the course of his employment on October 21, 1956, while attempting to open a valve which regulated the flow of pulpwood into a cooking vat, and that the medical proof was undisputed that the claimant was temporarily totally disabled at the time of the hearing in 1957. Nothing was settled on the former appeal other than that the Commission erred

in failing to award to the claimant compensation for temporary total disability.

As stated above, the parties, by express stipulation, agreed during the second hearing that the record on the first appeal should be treated as a part of the record on this appeal; and after a careful examination of the records made during both hearings, we are of the opinion that the Commission and the circuit court erred in their finding that the claimant had not reached maximum recovery from the work connected injury at the time of the second hearing, and that the claimant was entitled to compensation for temporary partial disability after October 15, 1958, ''until such time as his condition becomes static.''

██ ■ It is generally held that where the claim for compensation is based on a mental or nervous disease allegedly resulting from an industrial accident, the accident must be established by evidence bringing it within the realm of probability, and the causal connection with the accident must be proved by clear evidence. 100 C.J.S. 721, 722, Workmen's Compensation, Section 555(15).

In Thompson v. Railway Express Agency (Mo. App. 1951), 236 S.W. 2d 36, 39, the Court said: ''A psychoneurosis under some circumstances does present compensable injury, but this should not open the way for indiscriminate compensation on that score simply because it follows an accident. The causal connection with the accident must be proven by clear evidence, for such a neurosis may arise from any number of causes.'' In Superior Mill Work v. Gabel (Fla. 1956), 89 So. 2d 794, the Court held that where an employee injured his right ankle and aggravated a pre-existing condition which successively led to thrombophlebitis, pulmonary embolus and anxiety neurosis, but surgery had prevented recurrence of pulmonary embolus, the cause of the neurosis, the connection between the neurosis and the in-

dustrial injury were too remote. See also Kowalski v. New York, New Haven & Hartford Railway Company, 116 Conn. 229, 164 A. 653, 86 A.L.R. 957..

In the case of Rathborne, Hair & Ridgeway Box Company v. Green, 237 Miss. 588, 115 So. 2d 674, this Court said: ''The rule in this state is that when a preexisting disease or infirmity of an employee is aggravated, lighted up, or accelerated by a work-connected injury, or if the injury combines with the disease or infirmity to produce disability, the resulting disability is compensable. A corollary to the rule just stated is that when the effects of the injury have subsided, and the injury no longer combines with the disease or infirmity to produce disability, any subsequent disability attributable solely to the disease or infirmity is not compensable.''

 The courts have generally held that, expert or medical testimony is not essential in every industrial injury case to establish the fact, character, and consequence of an accident or injury, but it is necessary in cases where there is a serious question resolvable only by skilled determination and which is not within the knowledge of lay witnesses or members of the fact finding tribunal. 100 C.J.S. 672, Workmen's Compensation, Section 555(5)b. See also Marley Construction Company v. Westbrook, 234 Miss. 710, 107 So. 2d 104; Cole v. Superior Coach Corp., 234 Miss. 287, 106 So. 2d 71.

 We find no substantial medical evidence in the record that we have before us on this appeal to support the findings of the attorney-referee and the Commission that the claimant had not reached maximum recovery from the effects of the work-connected injury at the time of the second hearing. The only medical testimony taken during the second hearing was the testimony of Dr. Bolding and Dr. Echols; and the testimony of those two doctors clearly shows that the claimant had fully

recovered from the work-connected physical injury complained of at the time they examined him in February, 1959, and that the claimant suffered no residual disability, temporary or permanent, as a result of that injury. It also appears from the doctors' testimony that, although partial inability to work continued, such partial inability to work was not attributable to the injury referred to, but was attributable solely to the psychoneurotic condition which existed prior to the injury. ██ █ Incapacity for work due to a mental condition not resulting from a work-connected injury, but due to other causes, is not compensable. Rathborne, Hair & Ridgeway Box Company v. Green, supra. We therefore hold that the claimant was not entitled to compensation for temporary partial disability or medical benefits after March 1, 1959.

There is no satisfactory proof in the record to show that the claimant had fully recovered from the effects of his work-connected injury prior to January 2, 1958, as contended by the appellant's attorney in his brief.

We have not considered on this appeal the provisions of Section 1, Subsection (9) of Chapter 276, Laws of 1960, which has been referred to by the appellant's attorney in his brief. That act was not in effect at the time of the injury complained of in this case; and the claimant's right to compensation for that injury was not affected by the provisions of the 1960 statute. Mills et al. v. Barrett, 213 Miss. 171, 56 So. 2d 485; Havens v. Natchez Times Publishing Company, 238 Miss. 121, 117 So. 2d 706.

For the reasons stated above the judgment of the lower court affirming the order of the Commission dated September 9, 1960, will be reversed, and a judgment will be entered here modifying and amending the order of the attorney-referee and the Commission, so as to provide that the liability of the appellant for the payment of medical and hospital expenses and compen-

sation for temporary partial disability shall be limited to, and shall not extend beyond, the period ending March 1, 1959. The appellant, however, shall be required to pay all medical expenses and hospital bills incurred by the claimant prior to that date, and to pay to the claimant compensation at the rate of $25 per week for temporary total disability from January 2, 1958, until October 15, 1958, and for temporary partial disability thereafter until March 1, 1959, with interest on each installment from the due date thereof until paid, plus an additional ten percentum as provided for in the order of the Commission; and the award, as thus modified and amended, will be affirmed by this Court and the cause remanded to the Commission for the enforcement of the award.

Reversed and judgment rendered here modifying award made by Workmen's Compensation Commission, and cause remanded.

*McGehee, C.J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.