JOHNSON *v.*
GULFPORT LAUNDRY & CLEANING COMPANY, et al.

No. 42990          April 13, 1964          162 So. 2d 859

*Fountain D. Dawson,* Greenville; *Crisler, Crisler & Bowling,* Jackson, for appellant.

*Eaton, Cottrell, Galloway & Lang,* Gulfport, for appellees.

KYLE, P. J.

This case is before us on appeal by Mrs. Sarah Johnson, claimant, from a judgment of the Circuit Court of Harrison County, affirming the findings and order of the Workmen's Compensation Commission reversing an order of the attorney-referee awarding compensation to the claimant for permanent total disability for an accidental injury alleged to have arisen out of and in

the course of her employment as a billing clerk for the Gulfport Laundry & Cleaning Company.

The record shows that the appellant worked for the Gulfport Laundry & Cleaning Company for a period of approximately 2½ years beginning July 1, 1957. No physical examination was required of the appellant when she began work for the laundry. The appellant was 42 years of age at that time. Her duties consisted of pricing laundry and dry cleaning tickets, including family laundry tickets, and laundry tickets for hotels, motels and other commercial establishments, and answering the telephone. She had received a high school education and was married in 1934. She had three children. She had been divorced from her husband and had worked in a garment factory for a period of several years prior to her employment by the Gulfport Laundry & Cleaning Company. She was hospitalized twice during the period of her employment by the Laundry Company for physical ailments not related to the disability for which compensation is now claimed. She left her employment with the Laundry Company voluntarily on December 24, 1959, and without giving notice to her employer that she was quitting her job. The claimant testified that the interruptions of the telephone caused her to be nervous and upset to the extent that she could not work. When she left the office on December 24, 1959, she told no one that she had suffered a disability or that she did not intend to return to work after the Christmas holidays.

The claimant filed her application for workmen's compensation benefits on Forms B-5 and B-11 (Revised and consolidated) on January 13, 1961. She stated in her application, under the heading "Description of Accident and Cause of Injury" the following: "Extreme nervous condition, due to overwork. In addition to billing work, had to answer telephone, posting bills, keeping record of bills and obtaining them from route

salesmen.'' In answer to the question as to "medical treatment rendered and nature and extent of her disability,'' she stated that she began going to see Dr. M. M. Snelling in February 1959 for a nervous condition and was treated up to December 1959, when she finally left her work due to an extreme nervous condition.

The Laundry & Cleaning Company and its insurance carrier, as defendants, filed their answer to the claimant's application on February 4, 1961, and in their answer the defendants denied that the claimant had suffered an accident or was injured on the job, or that she had any employment connected disability; and in their answer the defendants alleged that, if the claimant was suffering in any manner it was from a long-time illness, not accidental and having no relation to her employment.

Hearings were had before the attorney-referee, and at the conclusion of the hearings the attorney-referee found that, on and prior to December 24, 1959, the claimant sustained an accidental injury which arose out of and in the course and scope of her employment and was compensable, and that the employer had notice thereof within the period of time prescribed by law. The attorney-referee found that the claimant had suffered no loss of time until December 24, 1959; that the claimant had not reached maximum medical recovery from the accidental injury and was in need of further medical treatment. The attorney-referee therefore ordered that the Gulfport Laundry & Cleaning Company, employer, and its insurance carrier, pay to the claimant compensation beginning December 25, 1959, for permanent total disability at the rate of $32.85 per week, for a period not to exceed 450 weeks or the maximum of $12,500, whichever should be the lessor in amount, and that the employer and its insurance carrier pay all necessary medical expenses and hospital bills incurred or to be incurred as a result of the accidental injury,

and that the defendants pay to the claimant penalties as provided by Section 13(e) of the Workmen's Compensation Act.

The employer and its insurance carrier filed a petition for review by the full Commission; and after reviewing the evidence and the findings of the attorney-referee the Commission, on June 14, 1961, rendered its decision and by a majority vote entered an order reversing the findings and the award of the attorney-referee and denying compensation benefits to the claimant.

The Commission found that the claimant was employed by the Gulfport Laundry & Cleaning Company in July 1957 and continued in said employment, performing substantially the same duties, until December 24, 1959; that so far as the record showed her work load was not increased and her work was most pleasant; that the claimant left her employment by the Laundry & Cleaning Company on December 24, 1959, without giving notice to the employer of any disability attributable to her work, and without giving notice of her intention not to return to work; and that the record was clear that the employer had no knowledge of the assertion of any claim by the claimant until a claim for compensation was filed on January 13, 1961. The Commission in its findings of fact stated: "The evidence in the case does not reveal the occurrence of any incident, accident or traumatic experience, which did or could have caused or aggravated any physical disability to the claimant; nor does the testimony reflect that the claimant is now suffering from any physical disability attributable to or resulting from any injury arising out of or in the scope of her employment. In fact it would appear that the employment of the claimant in this cause was most uneventful; that she did her work in an orderly manner; that there was no pressure from the work; that the work load was not increased; and

she apparently got along well with her employer and fellow employees.''

The Commission found that there was no testimony in the record which disclosed any untoward event, unusual occurrence, accident, injury or trauma; and it was the opinion of the majority members of the Commission that the evidence failed to disclose that the claimant sustained any accidental injury within the provisions of the Mississippi Workmen's Compensation Act, and that the evidence failed to disclose that the claimant was suffering from any disability compensable under the provisions of the Act.

One member of the Commission filed a dissenting opinion in which he stated that in his opinion the majority members of the Commission had totally disregarded the medical testimony, which in his opinion was sufficient to establish the appellant's claim that she was totally incapacitated from performing the duties of her employment, and that her disability was the result of the performance of her duties as an employee of the Gulfport Laundry & Cleaning Company.

From the decision and order of the Commission, the claimant prosecuted an appeal to the circuit court, and that court, on March 1, 1963, entered a judgment affirming the findings and order of the Commission.

The appellant has assigned and argued four main points as grounds for reversal of the judgment of the circuit court affirming the findings and order of the Commission: (1) That the Commission did not have substantial evidence on which to base its opinion reversing the attorney referee; (2) that the Commission erred in holding that the claimant was not entitled to compensation because there was no occurrence of any incident, accident, or traumatic experience; (3) that the Commission and the circuit court erred in wholly disregarding the undisputed medical evidence; (4) that the Commission and circuit court erred in holding that

the appellant's disability was not causally related to her employment.

We think there was no error in the findings and order of the Commission or in the action of the circuit court in affirming the findings and order of the Commission.

The appellant had the burden of proof that she had suffered an accidental injury arising out of and in the course of her employment, within the meaning and contemplation of the Mississippi Workmen's Compensation Act; and the appellant, in our opinion, failed to meet that burden of proof. It is not claimed that the appellant suffered any physical injury which resulted in her disability. The appellant suffered no cerebral thrombosis, as in the Dinsmore case (Ins. Dept. of Miss. v. Dinsmore, 233 Miss. 569, 102 So. 2d 691) which is cited by the appellant's attorneys in their brief. It was not shown that the claimant's disability resulted from traumatic neurosis, as in the cases of Barr v. Builders, Inc. (1956), 179 Kan. 617, 296 P. 2d 1106, and Eastern Coal Corporation v. Thacker (Ky. Ct. App. 1956), 290 S.W. 2d 468, which are cited in the appellant's brief, or from posttraumatic neurosis produced by brain concussion and shock, sustained in an accidental injury, as in Wade Lahar Construction Co. v. Howell (Okla. 1962), 376 P. 2d 221; or from an aggravated heart condition brought on as a result of a service connected trauma, as in Sollit Construction Company v. Walker (Ind. 1956), 135 N.E. 2d 623. As stated by the Commission in its findings of fact there is no testimony in the record which discloses any untoward event, unusual occurrence, accident, or injury incident to her employment by the Laundry Company to which the claimant's disability could be causally related.

The appellant's own witness, Dr. Charles R. Smith, a psychiatrist of New Orleans, whose examination of appellant was made fourteen months after she left her employment at the Gulfport Laundry & Cleaning Com-

pany, testified that her chief complaints to him were: "I've kept having this terrible hurting in my chest, and headaches;" and that she described to him "fairly typical anxiety symptoms, including feeling of inner tightness, occipital headaches (varying frequently in location), vomiting, nausea, depression, difficulty in concentration * * * and memory impairment, all of which were related to what she described as extenuating circumstances at work." The doctor stated that Mrs. Johnson told him she terminated her employment in December 1959, and for a short time thereafter she felt better, but much of her anxiety persisted. She then visited friends in California and considered seeking employment there, but whenever she reported to an employment office or sought employment she became phobic with ideas of personal worthlessness, that she had failed once and would do it again; that she returned to Greenville and the same problem continued. She found herself increasingly sensitive and with more feelings of helplessness and inadequacy. The doctor stated that, on brief neurological examination, Mrs. Johnson was found to have no gross abnormality other than moderate tremor of both her upper extremities; that her blood pressure was within normal limits. The doctor stated that his examination was limited primarily to a psychiatric examination. She appeared to be depressed as well as anxious during the interviews, either with tears or on the verge of tears. The doctor found some memory concentration impairment, but there were no other defects to be found in orientations and intellect. The doctor stated: "There is no evidence of malingering, and it cannot be stated that her job was the cause of her illness, but factors there did tend to aggravate her condition * * * The most likely diagnosis is that of an involutional depressive reaction, frequently called involutional psychotic reaction; however, in this case, as is frequently seen, there is no evidence of psychosis.

This condition is seen as a result of menopause, surgical or natural, in women of her age group. The personality change and symptoms which came about in her case are frequently seen in her personality pattern, the obsessive and rigidly conscientious person. The prognosis in these cases is usually good with proper psychiatric treatment, which is advised in her case.''

Dr. M. M. Snelling, who was called to testify as a witness for the employer and its insurance carrier, testified that the claimant had been a patient of his for a period of approximately 15 years or more; that she had always exhibited a nervous temperament. The doctor stated that he had performed a hysterectomy during the month of August 1957; that she developed adhesions from that operation, and a second operation was performed about a year later for the purpose of correcting the adhesions. He stated that with each passing period of several years the claimant's nervous temperament and disposition had gotten a little worse. Dr. Snelling was asked the following questions and gave the following answers: ''Q. Dr. Snelling, I want to ask you whether in arriving at your conclusions as to her nervous condition you knew of personal problems which she had that were not connected with her work of any kind? A. I certainly did. Q. And, in your opinion, did those problems not connected with work of any kind play the major factor in your opinion of the nervous condition which she had? A. I think so.''

In the case of International Paper Company v. Wilson (1962), 243 Miss. 659, 139 So. 2d 644, the Court said:

''It is generally held that where the claim for compensation is based on a mental or nervous disease allegedly resulting from an industrial accident, the accident must be established by evidence bringing it within the realm of probability, and the causal connection with the accident must be proved by clear evidence. 100 C.J.S. Workmen's Compensation § 555(15), pp. 721, 722.

"In Thompson v. Railway Express Agency (1951), 241 Mo. App. 683, 236 S.W. 2d 36, 39, the Court said: 'A psychoneurosis under some circumstances does present compensable injury, but this should not open the way for indiscriminate compensation on that score simply because it follows an accident. The causal connection with the accident must be proven by clear evidence, for such a neurosis may arise from any number of causes.'"

██ ██ Incapacity for work due to a mental condition not resulting from a work-connected injury, but due to other causes, is not compensable. Rathborne, Hair & Ridgeway Box. Co. v. Green, 237 Miss. 588, 115 So. 2d 674.

██ ██ The probative value of medical testimony is for the fact finding tribunal to decide. 100 C.J.S., 676, Workmen's Compensation, §555(5)c; and cases cited. "The mere expression of a medical opinion couched in somewhat equivocal language may not always be grasped as a substitute for fair and substantial evidence in the field of mental illness, and if testimony of an expert witness is unconvincing, his conclusions need not be accepted." 100 C.J.S., 721, 722, Workmen's Compensation, § 555(15).

██ ██ After a careful review of the evidence, including the medical testimony, we think the Commission was amply justified in its finding that the claimant's disability at the time of the hearing was not due to any injury arising out of and in the course of her employment by the Laundry Company, but was attributable solely to a psychoneurotic condition or emotional disturbance due to causes other than her employment by the Laundry Company.

We find no reversible error in the record, and the judgment of the circuit court affirming the findings and order of the Commission is therefore affirmed.

Affirmed.

*Ethridge, Gillespie, McElroy, and Rodgers, JJ.,* concur.