195 So.2d 95 (1967)
MILLER TRANSPORTERS, LTD. and Security Insurance Group, Defendants-Appellants,
v.
Billy C. REEVES, Claimant-Appellee.
No. 44211.
Supreme Court of Mississippi.
February 6, 1967.
*96 Ray, Lee, Moore & Coleman, Jackson, for appellants.
Gordon & Henry, Union, for appellee.
PATTERSON, Justice:
Billy C. Reeves was injured May 18, 1963, during the course of his employment as a truck driver for Miller Transporters, Ltd. A car entering the highway from a side road struck the side of the truck Reeves was driving, killing two of the occupants of the car and injuring three others. Reeves received physical injuries as the result of the accident which his employer admitted resulted in a five per cent permanent partial disability.
After the accident, and upon being discharged by the doctor on July 29, 1963, Reeves returned to work as a truck driver and continued in this employment until February 24, 1964. He was paid three days compensation benefits in November 1963 and fifty dollars in January 1964 while off from work with influenza, as well as one or two payments in late January and early February 1964 while incapacitated with pneumonia. He has not worked since February 24, 1964.
The attorney-referee and the Workmen's Compensation Commission found that Reeves was "in need of additional medical treatment for his emotional disturbance and that such condition is related to the accident for which compensation is claimed." Temporary partial disability was designated by the attorney-referee as being fifty per cent since February 24, 1964. The circuit court affirmed the order of the attorney-referee and the commission.
Miller Transporters, Ltd., employer, and Security Insurance Group, carrier, appealed to this Court relying on the testimony of Reeves' neuropsychiatrist that his emotional disturbance after the accident and his fear of returning to his employment as a truck driver were due to a pre-existing basic personality disorder and were not the result of an injury.
The question to be decided is whether the emotional disturbance of the claimant is attributable to an on-the-job accident and compensable as an "injury" resulting in "disability" as defined by the Workmen's Compensation Law.
Reeves had been working as a truck driver for Miller Transporters for more than eight years the day the accident occurred. He testified that he was sickened and upset by the sight of the wreckage victims and the sound of screaming. He received first aid treatment from a physician in Magee shortly after the accident and was treated by his personal physician, Dr. Laird of Union, beginning May 20, 1963.
*97 Dr. Laird's examination revealed five fractured ribs and a mild cerebral concussion. He stated that "the mechanism of injury was compatible with a torsion whiplash * * *" Reeves was hospitalized two days later complaining of pain in the "entire chest area, back of his neck, some headache and the entire spinal area, especially in the thoracic area of the spine." Reeves remained in the hospital about ten days and thereafter was treated as an outpatient until July 29, 1963, when Dr. Laird released him to return to work on a trial basis. Reeves continued to see his doctor, to receive medication, and to work at his job as a truck driver, though, as he testified, under mental stress during this employment. In November 1963 he was again off from employment for about a week when Dr. Laird referred him to Dr. Purvis, a Jackson orthopedic surgeon, for examination. Dr. Purvis at that time prescribed muscle exercise and a return to work. Reeves was back on the job in late November, but was admitted to the Laird Hospital-Clinic in Union on January 6, 1964, suffering from influenza. He was released, and on February 19, 1964, readmitted according to Dr. Laird, "with influenza, with the fibroid condition, with extreme nervousness at that time."
Backache being a major part of Reeves' complaint, he was referred again to Dr. Purvis who admitted Reeves to a Jackson hospital in March 1964. Dr. Purvis reported to Dr. Laird that he found no essential residual difficulty with the rib cage, but did find a slight wedging deformity of the eighth dorsal vertebra which was indicative of a healed compression fracture of the eighth dorsal vertebra.
Dr. Naef, a Jackson neurologist and psychiatrist, was called in for consultation by Dr. Purvis. As a result of this consultation Dr. Naef continued to see Reeves after his release from the hospital in Jackson on March 14, 1964, until October 1964. In April 1964 Reeves complained to Dr. Laird of some moderate back pain, recent episodes of loss of balance or vertigo, with blackingout spells. Dr. Laird testified that he was unable to establish any definite physical cause for the episodes of blacking out. He stated in regard thereto, "As far as the nervous condition that this man exhibited, it was related to the periods of extreme nervousness and all of which dated back to the original accident." At the hearing Dr. Laird was asked, "This emotional condition for which you have been treating him, is that or is it not related to the accident he had May 18, 1963?", which he answered by stating, "In knowing this man's past history and having treated him and having treated his family over the past ten years and knowing him quite well in the meantime, in view of his medical treatment, there is no condition such as this that existed prior to that accident. The man is, without doubt, one of the least capable persons to malinger that I've ever known. He's always been an extremely hard worker and has made a good living, has enjoyed, and really if one man has ever enjoyed truck driving, he's one that does just that. There has been no previous episodes as far as this type condition is concerned."
He further testified that Reeves was presently physically unable to work for two reasons: "for the low back pain that he does and he has had, for the upper or thoracic area pain, that's as far as the physical status is concerned; emotionally, now he is not able to." Dr. Laird also testified that even if there were no emotional disturbance involved, Reeves could not return to driving the truck because of the physical effort required. Dr. Laird was asked if he was saying that Reeves would never be able to go back to driving the truck, and he replied: "I am, yes."
Reeves' wife and several friends testified that there had been a personality change in Reeves since the accident; that he had become moody, irritable and nervous, which traits were unlike his once pleasant and easy going nature.
*98 Dr. Naef testified he saw Reeves daily while he was in the Jackson hospital from March 6 through March 14, 1964, and about a dozen times thereafter. He found no evidence of physical disability, and x-rays and a physical examination revealed no signs of injury of the spinal nerves, spinal cord or brain. Dr. Naef found that Reeves did have some tenderness of the muscles in the back of his neck and in the thoracic portion of his back, and of the "insertion" of muscles along the sacrum and pelvis in back.
These findings, Dr. Naef testified, were consistent with Reeves' complaints of muscular discomforts. He stated:
We found no evidence of physical injury. All of his symptoms were functional from the very beginning. The initial emotional disturbance after the accident was what we would call an acute stress reaction, which would mean a temporary emotional disturbance in reaction to a frightening experience.
The following testimony by Dr. Naef was recorded at the hearing:
"Q. That basic passive personality that you have discussed, state whether or not the accident that he was in caused that or whether it was the pre-existing condition you explained?
"A. No. After seeing him over and over and over, I am dealing with himself. His basic personality is that of an overgrown boy who depends on his mother. She mothers him. She is over-protective. She came with him several times. He has not got any aggression or any gumption enough to take care of himself.
"Q. Was the accident responsible for that?
"A. No, this is his basic personality. His adjustment to life is one of passivity and taking the easy way. He has a dependent nature in which he would be dependent upon others to solve his problems, to manage his affairs, take care of his responsibilities, if they will do it. This is his basic personality. The accident came along and upset him for a good while and caused a lot of emotional disturbance, but he got over that and then he was revealing his own personality inadequacies, which I've determined as a passive dependent personality disorder, which is his basic self and he's always had that."
On April 14, 1964, Dr. Naef was of the opinion that Reeves could return to work, but not to driving a truck. He said he told Reeves in July of 1964 that he would agree to his return to his job as a truck driver on a trial basis. In a medical report made October 26, 1964, and included in the record, Dr. Naef stated:
I believe he (Reeves) is still disabled in terms of returning to his former job but he is not otherwise disabled. The disability is due to a post-traumatic stress reaction with a phobic neurotic reaction in regard to the work of driving a truck. This disability is of a temporary nature but indefinite duration. It is a partial disability in the terms of his being able to work in a general sense and becomes significant only when applied to his former job. The prolonged duration of his illness is partly due to his basic passive dependent personality.
Dr. Naef said he felt it would be therapeutically helpful if the disability claim could be settled so that Reeves would be "relieved of the detrimental dependence upon compensation."
"It was apparent to me that he was depending, not just financially upon compensation, but psychologically upon the meaning of the compensation."
Dr. Naef said that Reeves was in need of psychiatric care for his basic dependent personality disorder, but not in connection with the accident.
Reeves would not get well, according to Dr. Naef, "as long as he is required to return to that particular job of driving a truck" and would remain emotionally disturbed *99 as long as his wife continued to mother him and to earn a living for him.
His "inability to go back on that truck is due to his basic personality disability, not the effects of the injury," according to Dr. Naef.
Reeves testified that he didn't go back to work after February 24, 1964, because "my back got to where I couldn't go and I was having dizzy spells and my nerves went haywire." He said he had not tried to find work since that time, but that he had asked for a different type work at Millers  "anything except driving"  and was told there wasn't other employment available.
The following findings of fact were made by the attorney-referee and affirmed by the commission and the circuit court:
1. That Claimant's average weekly wage at the time of the injury was $95;
2. That Claimant is in need of additional medical treatment for his emotional disturbance and that such condition is related to the accident for which compensation is claimed;
3. That Claimant's wage earning capacity during his period of temporary partial disability since February 24, 1964, is not evidenced by wages actually earned and his wage earning capacity for temporary partial disability is hereby fixed as being 50%.
The employer and carrier were ordered to continue medical benefits and to pay claimant $31.67 per week from February 24, 1964, until his condition becomes static and his permanent disability, if any, is evaluated subject to the limitations of the act.
Appellants contend that the court below erred in accepting testimony of Dr. Laird over testimony of Dr. Naef, because some of Dr. Laird's testimony and findings were not "medical findings" within the meaning of the statute. It was urged by appellants that Dr. Laird's testimony be taken as ordinary lay testimony because he testified that he could establish no definite physical cause for the episodes of blacking out and that Reeves' nervousness "dated back to the original accident," the latter being merely an observation and not a "medical finding." Appellees on the other hand note that Dr. Laird was Reeves' personal physician for more than five years before the accident, had never treated him for a back injury or for a nervous condition until the accident, and is therefore qualified to have his opinion of his patient considered.
Appellants' major premise is that compensation is not payable for a mental injury precipitated by a mental cause under the Workmen's Compensation Law, and they assigned as error the awarding of "any compensation for the mental condition in this particular case."
We are of the opinion that the defendant's assignment of error is not well taken. In support of their position the appellants cite the cases of Straws v. Fail, 17 A.D.2d 998, 233 N.Y.S.2d 893 (1962); Chernin v. Progress Service Co., 9 A.D.2d 170, 192 N.Y.S.2d 758 (1959); and Bekelski v. O.F. Neal Co., 141 Neb. 657, 4 N.W.2d 741 (1942), all to the effect that compensation is not payable for a mental injury precipitated by a mental cause, or stated in the form of a question, is an occurrence arising out of and in the course of employment  in which there is no physical injury  which causes psychological trauma aggravating a dormant repressed schizophrenia and resulting in mental disability compensable under the provisions of the Workmen's Compensation Law? These cases hold that in the absence of physical injury, purely excessive emotions, anger, grief, or other mental feelings, are not compensable.
The facts in each of these cases are distinguishable from the case at bar inasmuch as there was no physical injury in any of the cited cases, while here there is an admitted five per cent permanent partial disability resulting from physical injury received in the accident. In addition there is the testimony of Dr. Laird, a general practitioner, to the effect that there was a *100 direct connection between the physical injury and the emotional upset; and a medical report by Dr. Naef dated October 26, 1964, in which he stated that the claimant's prolonged disability "was partly due to this basic passive dependent personality," thus indicating that the duration of claimant's disability was not totally related to his basic passive dependent personality, leaving at least an inference that the disability was in part a result of the injury.
This court is committed to the rule of law that a claimant asserting that a mental or nervous disease has resulted from an industrial accident must show the causal connection between the accident and the psychoneurosis by clear evidence. National Impact Metal Corp. v. Huffstatler, 184 So.2d 877 (Miss. 1966); Powers v. Armstrong Tire & Rubber Co., 252 Miss. 717, 173 So.2d 670 (1965); Johnson v. Gulfport Laundry & Cleaning Co., 249 Miss. 11, 162 So.2d 859 (1964); Bates v. Merchants Co., 249 Miss. 174, 161 So.2d 652 (1964); and International Paper Co. v. Wilson, 243 Miss. 659, 139 So.2d 644 (1962).
The claimant doubtless suffered a physical injury which resulted in a permanent partial physical disability. The emotional upset is compensable if there is a clear causal connection between it and the physical injury. The crux of the situation is whether there is a clear causal connection portrayed by the evidence adduced in the cause. In Johnson v. Gulfport Laundry & Cleaning Co., supra, in determining a somewhat similar situation, we stated as follows:
The probative value of medical testimony is for the fact finding tribunal to decide. 100 C.J.S. Workmen's Compensation, § 555(5) c, p. 676; and cases cited. "The mere expression of a medical opinion couched in somewhat equivocal language may not always be grasped as a substitute for fair and substantial evidence in the field of mental illness, and if testimony of an expert witness is unconvincing, his conclusions need not be accepted. 100 C.J.S. Workmen's Compensation § 555(15), pp. 721, 722." 249 Miss. at 21, 162 So.2d at 863.
The commission could accept the testimony of Dr. Naef or it could reject it. Likewise, it could accept the testimony of Dr. Laird or it could reject it, since the determination of facts is clearly within the province of the commission.
After a careful review of the evidence, including the medical testimony, we think the commission was justified in its finding that the claimant's emotional disability at the time of the hearing was due to an injury arising out of and in the course of his employment. There is substantial lay testimony to support this position as well as the testimony of Dr. Laird who had known and treated claimant before and after the accident.
We are of the opinion, however, that the cause should be remanded to the commission for a determination and evaluation of the present emotional disability, if any, of claimant, in line with the commission order of April 29, 1965.
Affirmed and remanded.
ETHRIDGE, C.J., and JONES, INZER, and ROBERTSON, JJ., concur.