523 So.2d 314 (1988)
Elza FOUGHT
v.
STUART C. IRBY COMPANY, and Liberty Mutual Insurance Company.
No. 57620.
Supreme Court of Mississippi.
April 6, 1988.
*315 George F. Hollowell, Jr., William Noel Harris, Greenville, for appellant.
Dan McCullen, Butler, Snow, O'Mara, Stevens & Cannada, Jackson, for appellees.
Before ROY NOBLE LEE, C.J., and ROBERTSON and ZUCCARO, JJ.
ROBERTSON, Justice, for the Court:

I.
This is another of those troublesome cases in which an employee argues that her admitted mental or psychological disability is sufficiently job connected that she is entitled to workers' compensation. The Mississippi Workers' Compensation Commission found that claimant had failed to establish the requisite connection between her employment and her injury, rather, that her disability was attributable to a pre-existing personality disorder. Consistent therewith, the Commission denied benefits. By virtue of the familiar substantial evidence rule limiting our scope of appellate review, we affirm.

II.

A.
Elza Fought (Fought) was born on October 8, 1933. When she resigned from her position at Stuart C. Irby Company (Irby or employer) on May 12, 1981, she was 47 years old. Fought has a high school education and some business school training. She had been employed in clerical/secretarial positions, off and on, since she was 14 years old.
In July, 1974, Fought was hired by Irby to perform office/clerical duties in its Vicksburg store. Her supervisor, and the manager of the Vicksburg store, at that time was Guy Hegwood. Before long, Fought began developing the sale of residential lighting fixtures into a more profitable department. On June 1, 1975, Fought began receiving a three percent commission in addition to her salary. That commission was reduced to 1.5 percent of total sales, effective March 1, 1978. This decrease was not a penalty, but rather, was designed to bring Fought's compensation in line with that of other sales people. From June, 1975, through March, 1978, Fought received several letters of praise from Winston Graves (Graves), who was at that time Irby's Vice-President and General Manager.
In January, 1979, Hugh Fonville, who had been Assistant Manager, became Manager of the Vicksburg store. In May, 1981, he moved up in the company and Michael Vail (Vail) moved in as the Vicksburg Manager. Fought complains that, approximately six weeks after Vail arrived, he called her into his office and told her "he was not satisfied with [her] lack of initiative, that [her] absences were a real problem." Vail's records reflect that between January, 1979, and June, 1980, Fought had taken twenty (20) sick days. Fought testified about her reaction to this criticism:
... my feelings were shock, disbelief, I got dizzy, I got lightheaded. I held onto the facing of the door until I could get to the bathroom, which was just three or four steps across the hall. I let the top down on the commode and I sat there for fifteen or twenty minutes trying to get up ... I stayed there a total of thirty to forty-five minutes before I could regain my composure enough to get up.
No one else testified that they knew about or observed this occurrence. Vail testified that he did not notice if Fought got upset as a result of this meeting and added that "it was not unusual for Elza to spend quite a bit of time in the bathroom."
Fought and Vail continued to have periodic meetings, and Vail gave her lists of long and short-range objectives she was to accomplish, which were in addition to existing responsibilities. According to Fought, these new responsibilities included assembling and hanging a certain number of fixtures per week, seeing that damaged fixtures were repaired or replaced, and, devising a plan for bringing up sales or reducing inventory. From time to time, other responsibilities were added.
Fought routinely informed Vail that she did not have time to accomplish these goals. Her position is and was that Vail *316 was attempting to intimidate her and held these periodic meetings for purpose of harassment and in an attempt to force her to resign. In September of 1980, on the day that yearly inventory was to begin, Fought did in fact resign. However, she returned to work the next day and told Vail that she was sure he would have gotten it in writing if she had in fact resigned.
At a meeting on April 20, 1981, in Vicksburg, Graves and Vail discussed Fought's concerns and at that time put her on probation and gave her a final list of objectives to be accomplished by June 1, 1981. In Graves' opinion, the tasks were routine. Fought resigned on May 12, 1981, and later indicated that she did so because of stress created by "unrealistic assignments, unjust pressure, and job harassment by Mike Vail."

B.
The Claimant/Appellant, Elza Fought, filed her motion to controvert on March 8, 1982. On August 5, 1985, at the conclusion of numerous hearings, the Administrative Judge signed an order dismissing with prejudice Fought's permanent psychiatric disability claim.
The Administrative Law Judge made the following relevant findings:
(1) The date of the alleged injury would be May 12, 1981, the date claimant resigned;
(2) Claimant's mental or psychological well-being began to be adversely affected after the arrival of the new manager, Michael Vail, in the spring of 1980;
(3) Vail's new management policies and/or theory of management caused, to some limited degree, the claimant to develop a serious mental problem because the claimant viewed the changed policies and Vail's criticism of her performance and judgment to be unfair and unreasonable. But numerous other non-work-related factors throughout claimant's life substantially contributed to claimant's mental problems, such that were her injury compensable, apportionment would be mandated;
(4) The medical testimony of psychiatrist, Dr. Gray Hilsman, is accepted for certain limited purposes including the opinion that claimant's employment contributed to her mental condition, described as severe, dystemic mood disorder, including severe depression, and his opinion that she remained temporarily and totally disabled; and,
(5) Clear and convincing evidence establishes that the employer's actions, "although possibly unfair and even unreasonable, both in fact and/or from the claimant's view point, were routine, normal, common, and usual in the context of the American workplace" and "claimant's current mental condition was not caused by any specific incident, accident or traumatic episode or experience between the late spring, 1980, and May, 1981, but was caused to some degree by a continuous management policy which adversely affected the claimant."
On March 14, 1986, the Mississippi Workers' Compensation Commission affirmed the Administrative Judge's disposition of the case but modified his findings of fact in certain important respects. First, the Commission dismissed the Administrative Judge's finding that the new management policies to some extent caused the claimant's mental condition. The Commission, instead, determined that the claimant had failed to establish, by clear and convincing evidence, the requisite work connection between her employment and her disability. The Commission relied on the following evidence:
(1) The testimony of Dr. Naef and Dr. Mitchell clearly establishing that claimant's mental disability was attributable to a pre-existing personality disorder;
(2) Dr. Hilsman's opinion that the disability was related to the claimant's employment was based on a material omission of facts regarding claimant's medical history. Even if Dr. Hilsman had testified with knowledge of all material facts, Dr. Naef's and Dr. Mitchell's testimony contradicted his opinion; and
(3) Claimant experienced a severe mental and physical trauma (the alleged molestation of her grandchild) during this period *317 which was unrelated to her employment, but which exacerbated and combined with her preexisting personality disorder to result in the disability.
Last, the Commission found, contrary to the findings of the Administrative Judge, that the employer's management policy was not unreasonable or unfair, but rather, demonstrated a desire to rehabilitate claimant and return her to a productive level of performance. The Commission also noted that the claimant voluntarily resigned.
On July 24, 1986, the Circuit Court of Warren County summarily affirmed the Workers' Compensation Commission's findings of fact and law and order. Fought now appeals to this Court. Miss. Code Ann. § 71-3-51 (1972).

III.
A word about our scope of review.
The Workers' Compensation Commission is the trier and finder of facts in a compensation claim, the findings of the Administrative Law Judge to the contrary notwithstanding. See Dunn, Mississippi Workers' Compensation § 284 (3d ed. 1982). If the Commission's findings of fact and order are supported by substantial evidence, all appellate courts are bound thereby. Champion Cable Const. Co., Inc. v. Monts, 511 So.2d 924, 927 (Miss. 1987); Penrod Drilling Co. v. Etheridge, 487 So.2d 1330, 1332 (Miss. 1986); Georgia-Pacific Corp. v. Veal, 484 So.2d 1025, 1027 (Miss. 1986) (and cases cited therein); and Evans v. Marko Planning, Inc., 447 So.2d 130, 132 (Miss. 1984) (and cases cited therein); see also Dunn, Mississippi Workers' Compensation §§ 286, 288 (3d ed. 1982). This is so, even though the evidence would convince this Court otherwise, were we the fact finder. Georgia-Pacific Corp., 484 So.2d at 1028 (quoting Olen Burrage Trucking Co. v. Chandler, 475 So.2d 437, 439 (Miss. 1985)). Stated differently, this Court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence. Myles v. Rockwell International, 445 So.2d 528, 536 (Miss. 1983) (citing Masonite Corp. v. Fields, 229 Miss. 524, 91 So.2d 282 (Miss. 1956)); and Riverside of Marks v. Russell, 324 So.2d 759, 762 (Miss. 1975).
Beyond this, when a claimant seeks compensation benefits for disability resulting from a mental or psychological injury, the claimant has the burden of proving by clear and convincing evidence the connection between the employment and the injury. Smith & Sanders, Inc. v. Peery, 473 So.2d 423, 425 (Miss. 1985); Miller Transporters v. Reeves, 195 So.2d 95 (Miss. 1967); and Dunn's Mississippi Workers' Compensation § 114 (3d ed. Supp. 1984). Furthermore, to be compensable, a mental injury, unaccompanied by physical trauma, must have been caused by something more than the ordinary incidents of employment. Peery, 473 So.2d at 426; and, Brown & Root Const. Co. v. Duckworth, 475 So.2d 813, 815 (Miss. 1985); and Johnson v. Gulfport Laundry & Cleaning Co., 249 Miss. 11, 18, 162 So.2d 859, 862 (1964).

IV.
Today's case arises in an area that has not been without controversy. Many would deny compensability of mental or psychological injuries altogether, as they are difficult to prove both in experience and work connection. As proof is difficult, feigning and malingering are thought easy, thus opening the system to fraud.
Today's record narrows our focus. Without contradiction, Fought has experienced a mental or psychological injury. In the present posture of the case we need not concern ourselves with whether that injury is total or partial, permanent or temporary. To some extent and for some foreseeable period of time it does in fact exist. Nor need we consider whether that injury has been caused in part by a preexisting condition. Indeed, we may take it as established that Fought's disability was attributable at least in part to a preexisting personality disorder.
For a disability to be compensable, it must have arisen out of and in the course of employment. Miss. Code Ann. *318 § 71-3-3(b) (Supp. 1987). We shorthand this test by asking whether the disability is "work connected". The words formally used in the statute: "arising out of and in the course of" have been held to present an inquiry whether the risk which has given rise to the injury is "reasonably incident to the employment," Big "2" Engine Rebuilders v. Freeman, 379 So.2d 888, 890 (Miss. 1980), not whether the work was the proximate cause of the injury. The injury arises out of and in the course of the employment if the employment aggravates, accelerates, or contributes to the disability as opposed to being the sole or principal cause. See Dunn, Mississippi Workers' Compensation § 164 (3d ed. 1982).
Whatever our Mississippi law may once have been:
It is now clear that under appropriate circumstances, an employee can be compensated for mental/nervous injuries not immediately caused by physical trauma.
Brown & Root Construction Co. v. Duckworth, 475 So.2d 813, 815 (Miss. 1985); Smith & Sanders, Inc. v. Peery, 473 So.2d 423, 426 (Miss. 1985). To be sure, our law does not compensate disability attendant upon the general stress or normal human wear and tear of the workplace. Where, however, an employee experiences a series of identifiable and extraordinary stressful work connected incidents, benefits may be available.
We recognize that work connection is not a matter which may be proved with mathematical or scientific precision. The same is true, however, of cases involving heart attacks and strokes, disabilities we have long recognized as compensable. See, e.g., Johnston v. Hattiesburg Clinic, P.A., 423 So.2d 114 (Miss. 1982) (heart attack); Insurance Department of Mississippi v. Dinsmore, 233 Miss. 569, 102 So.2d 691, 104 So.2d 296 (1958) (stroke); see cases collected in Dunn, Mississippi Workers' Compensation §§ 90-99, 116-18 (3d ed. 1982 and Supp. 1986). While the fact of a mental or psychological disability may be more difficult to establish (a problem not present here), the work connection feature of cases such as this would seem quite analogous to heart attack and stroke cases.
We have two recent cases of consequence. In Smith & Sanders, Inc. v. Peery, 473 So.2d 423 (Miss. 1985), the claimant had a history of psychological disorders. When, after seventeen years of employment, the claimant was informed that he was to be laid off in two weeks, he suffered an immediate nervous breakdown, requiring hospitalization and shock treatments. This Court denied the claimant's request for disability benefits because (1) layoffs are unfortunate but not unusual events, and (2) the claimant did not prove that his injury was caused by the termination.
In Brown & Root Const. Co. v. Duckworth, 475 So.2d 813 (Miss. 1985), the claimant suffered an apparent stroke on February 20, 1980, immediately after learning that he would not be promoted from groundskeeper to foreman as he had been repeatedly promised. He was hospitalized for nine days. It was later determined that the claimant had not suffered a stroke, but rather an hysterical conversion reaction. The Commission ordered compensation. This Court affirmed, noting that "where the employer ... deliberately creates a heightened expectation of advancement... and then triggers a reaction by doing something the worker could reasonably perceive as a betrayal, we have a situation which is extraordinary and ... unlikely to recur."
Like Smith & Sanders and Brown & Root, this appeal turns in the end on the Commission's finding of fact. Specifically, we have in mind the Commission's finding that Fought had failed to prove that her disability was work connected.
In the first place, the "harassments" or stresses to which Fought was subjected may reasonably have been regarded nothing more than the ordinary incidents of employment, and not untoward events or unusual occurrences. Furthermore, Dr. Mitchell's and Dr. Naef's testimony supports the Commission's finding that Fought's mental disorder preceded her employment with Irby. The Commission, as the trier of fact, has the prerogative to discount some testimony, which is exactly *319 what they did to Dr. Hilsman's testimony. Dr. Mitchell's and Dr. Naef's testimony, as well as Fought's medical records, would support a determination that Fought's mental injury did not arise out of her employment.
Having in mind our limited scope of review and recalling the evidence outlined above, we cannot say the Commission erred clearly when it held Fought had not proved her disability sufficiently work connected to be compensable.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, GRIFFIN and ZUCCARO, JJ., concur.