# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-CC-00666-SCT

*BETTY A. SIBLEY*

*v.*

*UNIFIRST BANK FOR SAVINGS, EMPLOYER,*
*THROUGH RESOLUTION TRUST CORPORATION,*
*ITS RECEIVER, AND AETNA CASUALTY SURETY*
*COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/31/95 |
| TRIAL JUDGE: | HON. WILLIAM F. COLEMAN |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | BARRY W. GILMER |
| | LAURA HENDERSON |
| ATTORNEYS FOR APPELLEES: | ROGER C. RIDDICK |
| | DOUGLAS G. MERCIER |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 9/18/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/9/97 |

**BEFORE DAN LEE, C.J., McRAE AND SMITH, JJ.**

**DAN LEE, CHIEF JUSTICE, FOR THE COURT:**

¶1. Betty Sibley (Sibley) has appealed from a decision in the Circuit Court of Hinds County affirming the decision of the Mississippi Workers' Compensation Commission (Commission) finding that Sibley had suffered a "temporary total disability," but did not incur any compensable "permanent disability" causally connected to Sibley's witnessing a robbery/kidnaping while in the employ of Unifirst Bank for Savings (Unifirst). Aggrieved by the decision of the Circuit Court, Sibley assigns the following as error:

> **I. THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION AND THE CIRCUIT COURT'S FINDING THAT THE MEDICAL EVIDENCE FAILED TO ESTABLISH A CLEAR AND CONVINCING CAUSAL RELATION BETWEEN THE CLAIMANT'S INJURY AND HER DISABLING MENTAL CONDITION IS NOT**

**SUPPORTED BY SUBSTANTIAL EVIDENCE; and**

**II. THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION AND THE CIRCUIT COURT ERRED IN DISALLOWING THE MEDICAL TREATMENT OF DR. GUILD AND DR. WHEATLEY.**

¶2. After a careful examination of the record and briefs in this matter, we hold that the Circuit Court of Hinds County did not err in affirming the Mississippi Workers' Compensation Commission's decision that Sibley had sustained a temporary permanent disability, but had not suffered any compensable permanent impairment or disability causally related to Sibley's employment at Unifirst.

## STATEMENT OF THE FACTS

¶3. Betty Sibley was employed by Unifirst as the branch supervisor and head teller of the Metrocenter branch during September 1981. On September 17, 1981, a robbery occurred at the branch where Sibley was working. During the robbery, the robber, Marion Albert Pruitt (Pruitt), instructed Sibley to get her keys because he was going to take her as his hostage. Pruitt, however, took one of Sibley's co-workers, Peggy Lowe, as his hostage. Peggy Lowe's body was found six weeks after the robbery.

¶4. Pruitt was tried and convicted of bank robbery, kidnaping, and murder and received a sentence of death. Sibley and two other Unifirst employees were called to testify at Pruitt's trial in Columbus, Mississippi. Pruitt was later retried for the same robbery in Jackson, Mississippi, and received a life sentence. Sibley and other bank employees testified at this trial. Sibley also testified at a trial in Arkansas in which Pruitt was the defendant.

¶5. Sibley returned to work following the robbery, but testified that the trauma of the robbery caused her to begin "falling apart inside," and that this trauma was intensified by events following the robbery, such as: extensive questioning by the FBI regarding the robbery; survivor's guilt that Peggy Lowe had been taken in her place; criticism from customers concerning her handling of the robbery/kidnaping; the Lowe family's ostracism of her and her family; media coverage of the robbery; the appearances at the trials; and her perception that the bank failed to acknowledge and support her as a victim of the robbery/kidnaping.

¶6. In January, 1983, Sibley sought medical treatment from Dr. Gary Nelson, her family physician. She complained of anxiety caused by her children and her job circumstance. Sibley first sought psychological counseling in June, 1983, when she consulted Dr. Robin King, a psychologist. Dr. King recommended a leave of absence from her work. Sibley requested and received a six-week leave of absence, which was granted by Sherry Grimes, personnel director for Unifirst. Sibley received her full salary during this period, and Unifirst paid her doctor's bills in lieu of filing a workers' compensation claim because Unifirst did not want its workers' compensation rates to increase.

¶7. Aside from time off from work to visit the doctor and the six-week leave of absence, Sibley did not miss work due to the robbery between the date of the robbery and the date that her employment was terminated by the bank, December 10, 1990. Three months after the robbery, Sibley was promoted to Assistant Manager of the Metrocenter branch in Jackson. Sibley was promoted to Branch Manager of the McDowell Road branch in May of 1982. Each year following the 1981 robbery, until 1990, Sibley received merit wage increases.

¶8. Sibley contended that after the robbery she began to experience family problems. Sibley felt that she did not receive the appropriate emotional support from her husband or her parents. She testified that she felt deserted by her family. Sibley claimed that this lack of support drove her to have an extramarital affair between 1985 and 1989. She also developed other compulsive behaviors such as overspending and overeating.

¶9. According to Sibley's testimony, she began to embezzle money from a customer of Unifirst sometime during 1986. Her embezzlement of $62,000 was discovered as a result of Trustmark National Bank's takeover of Unifirst, which cut off her access to the documents necessary to continue her coverup (in 1990 Resolution Trust Corporation took over Unifirst; Unifirst was then acquired by Trustmark). Sibley faced criminal charges as a result of the embezzlement and she agreed to be placed in a diversion program. As a requirement of the diversion program, Sibley was to make restitution and agreed never to work for a financial institution again. Sibley was terminated on December 10, 1990, as a result of the embezzlement. Sibley has not been employed in any capacity since her termination from the bank in 1990.

¶10. Sibley saw Dr. King three times in 1986 and three times in 1987. Dr. King last treated Sibley in December 1990. Sibley began seeing Dr. Mary Wheatley in 1987 and continued to see Dr. Wheatley through the time of the hearing in 1993. Dr. Wheatley referred Sibley to Dr. Donald Guild in 1990, and Sibley continued to see Dr. Guild through the time of hearing. Sibley also saw Sue Ann Meng, a social worker in Dr. Guild's office. (The record does not indicate whether Sibley has continued under the care of any of these therapists since the hearing.)

¶11. On January 24, 1991, Sibley filed a Petition to Controvert against Trustmark and Unifirst, alleging that she sustained a work-connected mental injury on September 17, 1981, which has been continuous and ongoing since that time. Trustmark and Unifirst denied the occurrence of such a work-connected injury. Trustmark and Aetna Casualty & Surety were dismissed as defendants in this cause on January 25, 1993.

¶12. Hearings were held in Jackson before the Administrative Judge (A.J.) on March 4, April 22, and May 26, 1993. Testimony and exhibits were admitted which supported Sibley's claim of total disability resulting from the alleged mental and psychological injury caused by the robbery. According to his affidavit, Dr. King diagnosed Sibley as suffering from post-traumatic stress disorder (PTSD). Dr. Wheatley's affidavit stated that she also diagnosed Sibley as suffering from PTSD attributable to the robbery. Dr. Guild testified that Sibley suffered from PTSD resulting from the robbery, rendering her totally disabled. In her deposition testimony, Sue Meng, the social worker in Dr. Guild's office, also testified that Sibley suffered from PTSD. Meng did admit that Sibley had other stressors in her life, including marital problems, family problems, sexual abuse as a child, financial problems, the embezzlement, and her health. Meng also admitted that Sibley was able to function well enough to perform her job from the time of the robbery until the time of her termination in December, 1990.

¶13. Other testimony and exhibits indicated that Sibley had experienced an "untoward event," but contended that Sibley was not totally or permanently disabled. Dr. Richard Naef, a neurologist and psychiatrist who performed a consultation for Dr. Wheatley in 1990 and who has treated many patients with PTSD, testified in his deposition that Sibley did not suffer from PTSD because of the long length of time that had passed since the triggering event and because Sibley went back to work

and functioned well. Dr. Naef also stated that PTSD does not cause a person to commit criminal activity, nor does PTSD lead a person to have extra-marital affairs.

¶14. Dr. Robert Ritter, a board-certified psychiatrist who has treated patients with PTSD, testified that on the basis of his examination of Sibley and his evaluation of the records of Drs. Guild, King, Wheatley, and social worker Meng, Sibley did not suffer from PTSD. Dr. Ritter stated that the fact that Sibley could travel to the various trials of Pruitt and the long length of time which she was able to work following the robbery demonstrated that she was not suffering from PTSD. According to Dr. Ritter, Sibley concealed, during her medical examinations with other physicians, many significant factors such as an incestuous rape, her extra-marital affairs, and the embezzlement which caused her to lose her job. Dr. Ritter found no evidence of a psychiatric disorder which would keep Sibley from being gainfully employed.

¶15. Dr. Judith Lyons, a psychiatrist employed by the Veterans Administration Hospital and University Medical Center, also testified. Since 1984, Dr. Lyons has specialized in the treatment and research of non-combat related PTSD. Dr. Lyons reviewed Sibley's medical history, evaluated the diagnoses of her treating physicians, attended and heard the testimony at the hearing, and observed Sibley, her husband and her co-workers during the course of the hearing. According to Dr. Lyons' testimony, Sibley does not suffer from PTSD and her compulsive behavior patterns are not related to the bank robbery. Dr. Lyons testified that Sibley would not have been able to return to work and function effectively for nine years had she been suffering from PTSD. Dr. Lyons contended that Sibley's behavior, evidenced by the embezzlement and extra-marital affair, is not explained by the symptoms of PTSD. According to Dr. Lyons, Sibley suffered from a personality disorder related to childhood experiences. Dr. Lyons testified that Sibley does not meet the criteria for PTSD, that the previous diagnoses of PTSD were incorrect, and that, even if Sibley did suffer from PTSD, the treatment indicated was not given her by her previous therapists.

¶16. After hearing both expert and non-expert testimony and considering the remaining evidence, the A.J., on October 13, 1993, found that Sibley was "temporarily totally disabled because of the work-connected injury during the six-week period in mid-1983 when she took a leave of absence [from the bank] at the recommendation of Dr. Robin King", and stated that Sibley was entitled to "temporary total disability benefits at the rate of $112.00 per week during the six-week period in mid-1983 . . . with proper credit for wages earned by claimant and compensation paid by the employer during this period . . . ." The A.J.'s order also stated that Sibley was entitled to "all medical services and supplies required by the nature of her injury and the process of her recovery as provided in Section 71-3-15, specifically excluding the services of Dr. Mary Wheatley and Dr. Donald Guild."

¶17. On November 2, 1993, Sibley appealed the A.J.'s order to the Mississippi Workers' Compensation Commission After a Full Commission Hearing on January 31, 1994, the Commission affirmed the decision of the Administrative Judge on February 8, 1994. On March 7, 1994, Sibley appealed the Commission's order to the Circuit Court of Hinds County, which affirmed the Commission's findings on May 31, 1995. On June 14, 1995, Sibley filed her Notice of Appeal to this Court.

## STANDARD OF REVIEW

¶18. This Court will apply a deferential standard of review to the Commission's findings and

decisions. *Lanterman v. Roadway Express*, 608 So. 2d 1340, 1345 (Miss. 1992). This Court has stated that "[w]e will not determine where the [weight] lies when the evidence is conflicting." *Id.* (quoting *Metal Trims Industries, Inc. v. Stovall*, 562 So. 2d 1293, 1206-07 (Miss. 1990). The appropriate appellate standard is well settled in Mississippi law:

> The findings and order of the Workers' Compensation Commission are binding on this Court so long as they are supported by substantial evidence. *Fought v. Stuart C. Irby Co.*, 523 So. 2d 314, 317 (Miss. 1988); *Champion Cable Const. Co., Inc. v. Monts*, 511 So. 2d 924, 927 (Miss. 1987); *Penrod Drilling Co. v. Etheridge*, 487 So. 2d 1330, 1332 (Miss. 1986); *Georgia-Pacific Corp. v. Veal*, 484 So. 2d 1025, 1027 (Miss. 1986); *Evans v. Marko Planning, Inc.*, 447 So. 2d 130, 132 (Miss. 1984); *see also* Dunn, *Mississippi Workers' Compensation* § 286, 288 (3d ed. 1982). "This is so, even though the evidence would convince this Court otherwise, were we the fact finder." *Fought*, 523 So. 2d at 317; *Georgia-Pacific Corp.*, 484 So. 2d at 1028 (quoting *Olen Burrage Trucking Co. v. Chandler*, 475 So. 2d 437, 439 (Miss. 1985)).

*Mitchell Buick v. Cash*, 592 So. 2d 978, 980 (Miss. 1991). In other words, this Court will reverse the Worker's Compensation Commission only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence. *Fought v. Stuart C. Irby Co.*, 523 So. 2d 314, 317 (Miss. 1988); *Myles v. Rockwell International*, 445 So. 2d 528, 536 (Miss. 1983)).

¶19. Additionally, this Court has stated that the burden of proof is heightened in cases concerning mental or psychological injury: "[b]eyond this, when a claimant seeks compensation benefits for disability resulting from a mental or psychological injury, the claimant has the burden of proving by clear and convincing evidence the connection between the employment and the injury." *Fought*, 523 So. 2d at 317; *Smith & Sanders, Inc. v. Peery*, 473 So. 2d 423, 425 (Miss. 1985); *Miller Transporters v. Reeves*, 195 So. 2d 95 (Miss. 1967)).

## DISCUSSION OF THE LAW

¶20. Sibley has raised two interconnected issues for our consideration. The legitimacy of the second issue depends entirely upon the validity of the first issue. The standard of review is determinative of the first issue and, therefore, the entire case.

### I. THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION AND THE CIRCUIT COURT'S FINDING THAT THE MEDICAL EVIDENCE FAILED TO ESTABLISH A CLEAR AND CONVINCING CAUSAL RELATION BETWEEN THE CLAIMANT'S INJURY AND HER DISABLING MENTAL CONDITION IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE.

¶21. Sibley contends that the medical evidence which she introduced into the hearing before the Administrative Judge of the Mississippi Workers' Compensation Commission was sufficient to establish by clear and convincing evidence the causal relation between her alleged disabling mental injury and the robbery in 1981. Sibley presented evidence from her treating psychiatrists and therapists, all of which diagnosed Sibley as suffering from PTSD as a result of the robbery incident, that this mental injury had rendered her permanently disabled. According to Sibley, the Commission completely disregarded this testimony in deciding the extent of Sibley's disability resulting from her

mental injury. Sibley also contends that the Commission should have given more weight to the medical and psychiatric evidence provided by her experts instead of relying on the psychiatric evidence provided by the bank.

¶22. Sibley fails to realize that the question before this Court is not whether she presented substantial evidence to support her claim, but whether there exists in the record substantial evidence to support the Commission's findings. In the case *sub judice*, substantial medical and psychiatric evidence exists in the record which supports the finding of the Commission that Sibley does not have a permanent impairment attributable to the robbery. The Commission relied upon the testimony of Dr. Lyons, which, as discussed *supra*, indicated that Sibley's impairment may be attributed to pre-existing "characterological issues" and to subsequent stressors not related to the 1981 robbery: her poor relationship with her family (parents, husband, and children), a three-year sexual assault during early adolescence, her extra-marital affair and the anxiety engendered in attempting conceal it from her family, her lupus-like illness in 1988 and 1989, the anxiety over the takeover of Unifirst and the resultant lack of her access to the records after the takeover, the possibility of criminal prosecution for the embezzlement, and her financial problems pursuant to the discovery of he embezzlement. Dr. Lyons also testified that Sibley could have continued working at the bank had she not been discharged for embezzlement.

¶23. The evidence provided by Dr. Naef and Dr. Ritter, discussed *supra*, confirms and supports Dr. Lyons' evaluation of Sibley. Both Dr. Naef and Dr. Ritter disclosed that Sibley was not suffering from PTSD and that she was not totally impaired. Both Dr. Lyons and Dr. Naef have treated numerous patients with PTSD, while the experts provided by Sibley had much less experience with PTSD, but were her treating therapists.

¶24. The record discloses that the Commission did not disregard the testimony of Sibley's medical experts. A reading of the Commission's order demonstrates that, as part of the evaluation of the evidence, the testimony of Sibley's experts was given serious consideration. As finder and trier of facts in a compensation claim, the Commission is to evaluate and weigh the evidence. *Fought*, 523 So. 2d at 317. The Commission, by and through the A.J, weighed the conflicting medical testimony and found the evidence provided by the bank's experts to be more credible and persuasive than that provided by Sibley's experts.

¶25. As to Sibley's contention that the Commission should not have relied upon the testimony of Dr. Lyons because she had not examined Sibley, but testified based upon her evaluation of Sibley's medical and psychiatric records and observation of the trial, discussion of several points is in order. Sibley relies upon *Johnson v. Ferguson*, 435 So. 2d 1191 (Miss. 1983), to support her contention that the Commission erred in relying upon the testimony of Dr. Lyons rather than that of her treating physicians, Dr. Wheatley and Dr. Guild, and the social worker, Sue Meng. *Johnson* is distinguishable from the case *sub judice* in that it involves an A.J. who relied upon the expert testimony of a doctor who did not perform a myelogram even though the physician admitted that such a test was the sole diagnostic tool available to rule out the possibility of a herniated disc. *Id.* at 1195. This Court held that when an expert's testimony is based upon an inadequate or incomplete examination, the expert's opinion does not carry as much weight when compared to an expert that has made a thorough and complete examination. *Id.*

¶26. Our rules of evidence state that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before a hearing." M.R.E. 703. In the case *sub judice*, Dr. Lyons based her opinion upon her observation of Sibley in the hearing and upon the medical and psychiatric records of her treating physicians. The evidence was properly admitted; the only issue to be resolved was the weight to be given to the testimony, a responsibility given to the Commission.

¶27. Sibley also fails to realize that the record indicates that two other physicians/psychiatrists concurred with Dr. Lyons' diagnosis. These two physicians, Dr. Naef and Dr. Ritter, both examined Sibley and found that she did not suffer from PTSD and was not permanently impaired as a result of a work-related injury. All three experts presented by the bank had more experience dealing with PTSD than did any of Sibley's treating physicians. Dr. Wheatley and Dr. Guild did not have access to Sibley's entire background; Meng's deposition demonstrated that Sibley had withheld vital information about the sexual abuse in her childhood. Again, this goes to the weight and credibility of the medical evidence, an issue properly resolved by the Commission against Sibley.

¶28. Additionally, our case law states that Sibley's mental injury cannot be compensable as a total permanent disability because she suffered no loss of wage-earning capacity. In *Lanterman v. Roadway Exp., Inc.*, 608 So. 2d, 1240 (Miss. 1992), the claimant had been declared permanently and totally disabled by his treating doctors. We held that the claimant was not entitled to permanent disability benefits under the Act because he returned to work and resumed his daily work activities, stating that he "showed no loss of wage earning capacity as a result of his injuries . . . ." *Id.* at 1347. In the case *sub judice*, Sibley returned to work immediately following the robbery by Pruitt and continued working, receiving promotions and raises, up until the time she was fired for embezzlement, excluding, of course, the six-week period leave of absence in 1983. Had the A.J. relied solely upon the evidence provided by Sibley's experts, the Commission's ruling would have remained unchanged because Sibley cannot establish any loss in her wage-earning capacity causally related to the robbery in 1983, even though her experts testified that she was totally and permanently disabled.

¶29. Further, Sibley cannot contend that she was permanently disabled because of the termination of her employment. According to a leading treatise on worker's compensation law, termination due to misconduct does not support a finding of compensable total permanent disability:

> If the record shows no more than that the employee, having resumed regular employment after his injury, was fired for misconduct, with the impairment playing no part in the discharge, it will not support a finding of compensable disability.

Larson, *Worker's Compensation Law* (1992) § 57.64(a). In the instant case, the record clearly establishes that Sibley returned to work after the 1991 robbery, with the exception of the six-week leave of absence, and remained employed at the bank and its successor (Trustmark) until she was fired for embezzlement. Sibley was fired because of her own misconduct. Her job performance was not affected by any impairment, as she received promotions and raises up until the time of her discharge. Evidence at the hearing demonstrated that Sibley would be working at the bank today had she not been fired for her own misconduct. Sibley's termination due to her criminal activity, i.e. embezzlement, does not support a finding of compensability due to a total permanent disability.

¶30. Neither can Sibley assert that the Commission entered no finding of maximum medical recovery. In the A.J.'s order, affirmed and adopted by the Commission, the A.J. entered a finding that Sibley was temporarily totally disabled for a specific time period, the six-week leave of absence taken by Sibley in 1983. In so doing the A.J. *limited the disability to that time period only*. The intent of the A.J. is obvious; Sibley's disability had ended -- an effective finding that she had reached maximum medical recovery, a finding amply supported in the record by substantial evidence.

¶31. The standard of review is determinative in this case. This Court reviews the decision of the Commission and the circuit court on the substantial evidence standard. In the case *sub judice* the Commission heard all of the evidence, weighed its credibility and ruled that Sibley was temporarily totally disabled for a period of six weeks in mid-1983 as a result of the 1981 robbery, but denied her request for permanent disability. The record contains substantial evidence to support the Commission's decision. This assignment of error is without merit.

### II. THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION AND THE CIRCUIT COURT ERRED IN DISALLOWING THE MEDICAL TREATMENT OF DR. GUILD AND DR. WHEATLEY.

¶32. As stated *supra*, the Commission's ruling that Sibley did not suffer a compensable total permanent disability causally related to the 1981 robbery is supported by substantial evidence and, therefore, forecloses the authorization of payment for medical treatment during the period when Sibley was not impaired. This assignment of error is without merit.

### CONCLUSION

¶33. The decision of the Commission, affirmed by the Circuit Court of Hinds County, that Sibley is not permanently disabled due to a work-related mental injury, is supported in the record by substantial evidence. The Commission received admissible evidence, weighed its credibility and ruled against Sibley's request. This Court will reverse the Commission only upon a finding that Commission's decision was not supported by substantial evidence. Because the record is replete with substantial evidence to support the Mississippi Workers' Compensation Commission's decision, we affirm.

¶34. **AFFIRMED.**

**PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., CONCURS IN RESULT ONLY.**