# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2018-CT-00930-SCT

*ANGELA JONES*

*v.*

*MISSISSIPPI BAPTIST HEALTH SYSTEMS, INC.*
*AND MISSISSIPPI BAPTIST HEALTH SERVICES*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/06/2018 |
| TRIAL COURT ATTORNEYS: | DAVIS PETERSON |
| | ANDREW D. SWEAT |
| COURT FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | DAVIS PETERSON |
| ATTORNEYS FOR APPELLEES: | JENNIFER H. SCOTT |
| | ANDREW D. SWEAT |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE DECISION OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION IS REINSTATED AND AFFIRMED - 05/07/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     Angela Jones alleges that she sustained a compensable back injury while working as a registered nurse at Baptist Hospital. A Workers' Compensation Commission administrative judge determined that Jones sustained a compensable work-related injury. Baptist appealed the administrative judge's decision to the full Mississippi Workers' Compensation

Commission, and the Commission reversed, determining that Jones did not sustain a compensable work-related injury. Jones appealed, and the Court of Appeals reversed the Commission's decision. *Jones v. Miss. Baptist Health Sys. Inc.*, No. 2018-WC-00930-COA, 2019 WL 2605828, at *5 (Miss. Ct. App. June 25, 2019). Baptist then filed a petition for writ of certiorari with this Court. Because we find that the Commission's decision was supported by substantial evidence, we reverse the decision of the Court of Appeals and reinstate the Commission's decision.

## FACTS AND PROCEDURAL HISTORY[1]

¶2. Jones was employed by Baptist Hospital as a registered nurse for approximately fourteen years. On March 21, 2015, near the end of Jones's shift,[2] Jones alleges that she felt a "pop" in her right lower back while she was pushing a medicine cart. Jones's charge nurse, Theresa Blanton, was nearby, and Jones asked Blanton if she had heard the "pop." Blanton responded that she had not. Blanton did testify that she witnessed Jones grabbing her back and limping after that. Blanton then asked Jones if she needed medical attention, but Jones declined. Blanton also asked Jones if she needed help with her patients, but Jones again declined and finished her shift.

¶3. At the time of Jones's alleged injury, Baptist's policies and procedures required that

---

[1] Much of the facts and procedural history of this case are taken directly from the Court of Appeals' opinion, including additional relevant facts discussed in the dissenting decision of the opinion. *Jones*, 2019 WL 2605828, at *1–2; *Jones*, 2019 WL 2605828, at *5–7 (J. Wilson, P.J., dissenting).

[2] Jones's shift began at 7:00 p.m. on March 20, 2015, and ended at 7:00 a.m. on March 21, 2015. The alleged injury occurred around 5:00 a.m. on March 21, 2015.

2

employee injuries be reported in "Risk Man"—Baptist's risk management system. Jones testified that she was trained on how and when to use Risk Man, and she acknowledged that Baptist's policies required her to report an on-the-job injury in Risk Man. But Jones testified that she did not record the incident because she "did not realize that it was an injury or something to put into the Risk Man system."

¶4.     The following Monday, March 23, 2015, Jones emailed her supervisor, Jamie Hill, stating,

> I started having trouble on Tuesday last week with my leg, but Friday night it was hurting a lot. It has continued to hurt badly thru the weekend and I have a MD appt this morning. It is a sharp and very painful going from my hip on right leg down with a sharp pain to my knee. This is leg problem is post my back hurting and a "pop" in my lower back last week.

¶5.     That same day, Jones sought treatment from Dr. Larry Sivils. Dr. Sivils noted that Jones reported pain in her right leg from her hip to her knee. But Jones reported no lower-back pain. Dr. Sivils also noted that Jones "denie[d] direct injury." On the patient-information sheet at Dr. Sivils's office, Jones circled "no" when asked if the visit was related to an injury. The information sheet also asked the date and cause of the injury, but Jones drew a line through the corresponding spaces and added a question mark.

¶6.     Later, on March 23, 2015, Jones again emailed Hill to inform him that she could not work the following night. Jones explained to Hill that "[h]opefully it is just a sciatic nerve inflammation" and that she intended to return to work on Friday.

¶7.     On Thursday, March 26, 2015, Jones saw Dr. Eric Amundson. On the patient-history form, Jones circled "no" and added a question mark in response to the form's question about whether she had sustained an injury. Similarly, Jones circled "no" and added a question mark

3

in response to whether her "health problem" was due to "an on the job injury." Additionally, Jones noted on the patient-history form that she had been off work "since pain increased x 1 wk." Jones reported experiencing leg swelling related to her preexisting bicuspid aortic valve nine days before the visit, which would have been March 17, 2015—four days before the alleged injury. Dr. Amundson noted that, "[n]ine days ago, the patient reports developing right buttock and hip pain with radiation into her lateral thigh and anterior thigh" and that "[h]er pain progressed significantly six days ago." But Dr. Amundson noted that Jones "denie[d] any precipitating event."

¶8.     Dr. Amundson scheduled Jones for an MRI on March 27, 2015, "to evaluate for any L3 or L4 compressive nerve root pathology that may explain her symptoms." Dr. Amundson also stated that "[h]igh on the differential diagnosis is also meralgia paresthetica[3] given [Jones's] morbid obesity." Dr. Amundson felt that Jones's pain "may be secondary to meralgia paresthetica verses a lumbar radiculopathy." As a result, Dr. Amundson counseled Jones "on the importance of pursuing an aggressive weight loss regimen including decreased caloric intake and regular exercise."

¶9.     Jones consulted with Dr. Amundson again on April 2, 2015, for a follow-up after her MRI. After reviewing Jones's MRI, Dr. Amundson "recommend[ed] against surgical intervention." Instead, Dr. Amundson referred Jones to Dr. Edwin Dodd for pain management and suggested that she consider epidural steroid injections. On April 7, 2015,

---

[3] Dr. Amundson's notes indicate that meralgia paresthetica "is frequently seen in obese patients due to compression of the lateral femoral cutaneous nerve in the lateral inguinal region by the large abdominal pannus."

Jones was seen by Dr. Dodd, who noted that Jones's MRI showed a herniated disc at the L1-L2 level and other mild herniations. Dr. Dodd's report stated that Jones "describe[d] an approximately five-to-six-year history of lower back pain." Dr. Dodd further stated that Jones "began experiencing some new onset of moderate low back and right lower extremity radiation approximately two weeks ago without any obvious precipitating event." Dr. Dodd's notes reflect that he discussed epidural steroid injections with Jones and that he "had a lengthy discussion with Mrs. Jones . . . concerning her need to pursue weight loss efforts."

¶10. Jones completed a "pain evaluation" form at Dr. Dodd's office. Jones checked two options in response to the question, "[u]nder what circumstances did the pain begin?": "At work, not an accident" and "[p]ain just began, I can't relate it to anything." She did not check "[a]ccident at work." Jones further wrote that her pain had been "[p]rogressive after several shifts in a row, over time, was at work." But when Jones was asked for an "approximate date that [she] first experienced the pain for which [she was] seeking help," she drew a question mark and then wrote, "[p]rogressive for years." Similarly, Jones selected "no" when asked if her pain or injury was a workers' compensation case.

¶11. Following her consultation with Dr. Dodd, Jones emailed Hill later that day to inform him that Dr. Dodd wanted her to remain off work again the next day but that Dr. Dodd had "assure[d]" her that she could return to work on Friday, April 10, 2015. In response, Hill instructed Jones "to call HR regarding FMLA."[4] Jones then contacted Baptist's Human Resources Department, but it was determined that FMLA was unnecessary at that time due

---

[4] FMLA refers to leave under the federal Family and Medical Leave Act.

5

to her anticipated return to work the following day.[5]

¶12.   Jones continued to work at Baptist in April and May of 2015, but her pain did not resolve.  As a result, Jones sought a second opinion from Dr. James Woodall—an orthopedic surgeon with whom Jones had worked at Baptist.  Jones first saw Dr. Woodall on May 8, 2015.  On her patient-history form, Jones again selected "no" when asked whether her condition was a work injury.  Jones, however, claims that she told Dr. Woodall that her pain stemmed from an injury at work.  But Dr. Woodall's notes from Jones's May 8, 2015 visit make no mention of such a report from Jones.  Moreover, Dr. Woodall testified in his deposition that he did not recall Jones's ever claiming to have been injured at work.  Likewise, Dr. Woodall's notes from Jones's subsequent visits on June 18, August 7, September 23, and November 9, also make no mention of a work-related injury.  Dr. Woodall testified that, had Jones told him that her pain was related to some specific event or injury, he would have recorded that information in his notes.

¶13.   Jones continued to work at Baptist in June, July and August 2015.  Jones also continued to send emails to Hill and Brandy Bowlin, a Baptist HR department employee, to update them on her condition.  None of these emails suggested that Jones's physical problems were in any way attributable to a work-related injury.

¶14.   Jones had exhausted all of her accrued leave by August 2015.  Baptist then approved Jones's request for FMLA leave, which was scheduled to run out on November 9, 2015.  During September and October of 2015, Jones exchanged several emails with Bowlin to

_____

[5] It is unclear whether Jones or a member of the HR department determined that FMLA was unnecessary.

6

inquire whether it would be possible for her to return to work on "light duty" after her FMLA leave ended.

¶15. On October 21, 2015, Jones emailed Bowlin indicating that her injuries were related to pushing the medicine cart during her nursing shift. This was the first time that Jones had ever indicated that this event caused her injury. Bowlin directed Jones to another Baptist employee, Denise Hux, to discuss workers' compensation. Jones later obtained counsel and filed a petition to controvert.

¶16. On November 17, 2015, a nurse case manager from Baptist's workers' compensation carrier sent Dr. Woodall an inquiry regarding Jones's condition and prognosis. In response, Dr. Woodall opined that Jones's then-current diagnosis was not "causally related to her alleged work incident" in March 2015. Dr. Woodall wrote that there was "no specific acute pathology to support" that claim. Dr. Woodall described Jones's pain as "multifactorial[,] with disc disease, obesity,[and] deconditioning all contributing to her pain."

¶17. Dr. Woodall later testified by deposition that Jones's March 27, 2015 MRI disclosed no evidence of an "acute event" that would support Jones's claim of a work-related injury. Instead, Dr. Woodall maintained his earlier opinion that Jones's pain was more likely caused by other "non-specific" factors such as degenerative disc disease, which "certainly" predated March 2015.

¶18. An evidentiary hearing was held before an administrative judge on June 9, 2017. The administrative judge determined that "a preponderance of the evidence supports a finding that [Jones] sustained a work-connected injury on March 21, 2015." Baptist appealed this decision to the full Workers' Compensation Commission. The Commission found that Jones

7

"did not sustain a compensable, work-related injury" and entered an order reversing the decision of the administrative judge.

¶19.  Jones appealed the Commission's decision, and the case was assigned to the Court of Appeals.  A divided Court of Appeals reversed the Commission's decision "[b]ecause the evidence presented does not contradict Jones's testimony concerning the mechanism of injury . . . ."  *Id.* at *5.[6]  The majority found that "the Commission erred by disregarding Jones's evidence."  *Id.*  Presiding Judge Jack Wilson dissented, arguing that "[t]he Commission's decision must be affirmed because it is supported by substantial, competent evidence from multiple sources."  *Id.* at *10 (J. Wilson, P.J., dissenting).  Presiding Judge Wilson also pointed out that "the majority opinion is . . . based on a clear misstatement of current law."  *Id.* at *5 (J. Wilson, P.J., dissenting).  Baptist filed a petition for writ of certiorari with this Court, which we granted.

## STANDARD OF REVIEW

¶20.  "In workers' compensation cases, 'this Court reviews the decision of the Commission, not that of the [AJ], the circuit court, or the Court of Appeals.'"  ***Sheffield v. S.J. Louis Constr. Inc.***, 285 So. 3d 614, 618 (Miss. 2019) (alteration in original) (quoting ***Short v. Wilson Meat House, LLC***, 36 So. 3d 1247, 1250 (Miss. 2010)).  "This Court is 'bound by the decision of the Mississippi Workers' Compensation Commission if the Commission's

---

[6] Judge McCarty authored the majority opinion, joined by Judges Greenlee, McDonald, and Lawrence.  Judges Westbrooks and Tindell concurred in result only without separate written opinion.  Presiding Judge Jack Wilson dissented with separate opinion, joined by Chief Judge Barnes and Presiding Judge Carlton.  Judge Cory Wilson did not participate.

8

findings of fact are supported by substantial evidence . . . .'" ***Barber Seafood, Inc. v. Smith***, 911 So. 2d 454, 461 (Miss. 2005) (quoting ***Hardaway Co. v. Bradley***, 887 So. 2d 793, 795 (Miss. 2004)).

¶21.    Mississippi law clearly provides that "the Commission is the ultimate finder of fact in workers' compensation cases, and where substantial credible evidence supports the Commission's decision, then, absent an error of law, the decision must stand without judicial interference." ***Logan v. Klaussner Furniture Corp.***, 238 So. 3d 1134, 1138 (Miss. 2018) (citing ***Smith v. Jackson Constr. Co.***, 607 So. 2d 1119, 1124 (Miss. 1992)).  "This is so, even though the evidence would convince this Court otherwise, were we the fact finder." ***Hardaway Co.***, 887 So. 2d at 795 (internal quotation marks omitted) (quoting ***Fought v. Stuart C. Irby Co.***, 523 So. 2d 314, 317 (Miss. 1988)).  As a result, "this Court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence." ***Id.*** (internal quotation mark omitted) (quoting ***Fought***, 523 So. 2d at 317).

## ANALYSIS

### I.    Whether substantial evidence supports the Commission's decision.[7]

¶22.    The Commission determined that Jones did not sustain a compensable, work-related injury.  Under our limited scope and standard of review outlined above, we review the evidence that supports the Commission's decision.  If such evidence is substantial, we must

---

[7] Presiding Judge Wilson wrote a well-reasoned analysis of the evidence supporting the Commission's decision, from which we borrow heavily. ***Jones***, 2019 WL 2605828, at *7–9 (J. Wilson, P.J., dissenting).

affirm. ***Sheffield***, 285 So. 3d at 618. This Court has held that "'[s]ubstantial evidence' means more than a mere scintilla of evidence but does not rise to the level of a preponderance of the evidence." ***Id.*** (quoting ***Short***, 36 So. 3d at 1251). And we have explained that "[s]ubstantial evidence consists of sufficient evidence for reasonable minds to accept as adequate to support the Commission's conclusion." ***Id.*** (citing ***Short***, 36 So. 3d at 1251).

¶23. The Commission based its decision on the opinion of several of Jones's treating physicians and on Jones's repeated failure to report a specific work-related injury to either her healthcare providers or Baptist. According to the Commission, Jones's claim that she sustained a work-related injury was contradicted by other credible evidence in the record.

¶24. The Commission noted that two days after the alleged injury, Jones "denied a direct injury." The Commission noted that five days after the alleged injury, Jones was treated by Dr. Amundson, but she denied any precipitating event. Instead, Jones reported experiencing "right buttock and hip pain" four days before the alleged injury, with a significant pain progression six days before she was treated by Dr. Amundson. The Commission also noted that Jones described a five-to-six-year history of lower-back pain when she was treated by Dr. Dodd in April 2015. Furthermore, Jones indicated on Dr. Dodd's patient questionnaire that her back pain had been "[p]rogressive for years." Likewise, the Commission noted that Jones began receiving treatment from Dr. Woodall in June 2015 but that she "did not give a history of experiencing a 'pop' at work until June 2016." The Commission further noted that Jones provided continuous updates to Baptist concerning her condition and progress after the alleged injury, but she failed to mention any possible work-related injury until October 2015, seven months after the alleged injury had occurred.

10

¶25. Although Jones testified that her delayed reporting was because she was unaware that she had sustained an "injury," the Commission found Jones's explanation unpersuasive. Specifically, the Commission found it "implausible for [Jones], a registered nurse, to be confused if she had sustained an injury when she testified that the 'pop' she felt was unlike anything she had experienced before that moment."

¶26. The Commission further noted that Dr. Amundson, Dr. Dodd and Dr. Woodall all related Jones's back and leg problems, in part, to Jones's obesity, rather than to an acute injury. The Commission specifically pointed out that Dr. Amundson believed that Jones's symptoms potentially resulted from meralgia paresthetica, which is "frequently seen in obese patients." Similarly, Dr. Woodall testified that he could not, with reasonable probability, say that Jones's condition resulted from a work-related injury because his review of Jones's MRI revealed no evidence of an "acute event." Instead, Dr. Woodall described Jones's pain as "multifactorial[,] with disc disease, obesity,[and] deconditioning all contributing to her pain."

¶27. We find that the evidence detailed above constitutes substantial evidence reasonably supporting the Commission's order. This Court has noted that "[w]hen a patient gives a history to a physician which is inconsistent with allegations in a workers' compensation case, this is a significant factor in support of denial of a claim." *Raytheon Aerospace Support Servs. v. Miller*, 861 So. 2d 330, 336 (Miss. 2003) (citing *Hudson v. Keystone Seneca Wire Cloth Co.*, 482 So. 2d 226, 227–28 (Miss. 1986)). This principle supports the Commission's reason for emphasizing Jones's failure to report the alleged work-related injury for more than seven months.

¶28. Additionally, the Commission's finding that Jones's testimony was contradicted by

11

other evidence was well within the Commission's discretion and was not clearly erroneous. "[T]he Commission is the fact-finder and the judge of the credibility of witnesses." *Short*, 36 So. 3d at 1251 (citing *Barber Seafood, Inc.*, 911 So. 2d at 461). Indeed, we have held that "when evidence before the Commission casts doubt on the credibility of the testimony . . . , it is certainly within the discretion of the Commission to reject it." *Id.* at 1253 (citing *Barnes v. Buckeye Molding Co.*, 247 Miss. 614, 615–16, 157 So. 2d 63, 63 (1963)). Because the Commission's decision is supported by substantial evidence and is not clearly erroneous, we are bound by that decision and must affirm.

¶29. We would be remiss in our duties not to point out a serious error in the Court of Appeals' majority opinion. The majority opinion states as part of its standard of review "[w]hen the Commission 'fails to carry out the beneficent intent and purpose of the Workers' Compensation Act,' such an error in law has occurred." *Jones*, 2019 WL 2605828, at *1 (quoting *Beverly Healthcare v. Hare*, 51 So. 3d 223, 229 (Miss. Ct. App. 2010)). The majority opinion later quotes *Union Camp Corp. v. Hall* for its holding that "[t]he Workers' Compensation Act is to be construed liberally in favor of the claimants." *Jones*, 2019 WL 2605828, at *2 (internal quotation marks omitted) (quoting *Union Camp Corp. v. Hall*, 955 So. 2d 363, 371 (Miss. Ct. App. 2006)). But Presiding Judge Wilson's dissenting opinion rightly pointed out that "[n]one of that is the law anymore." *Jones*, 2019 WL 2605828, at *10 (J. Wilson, P.J., dissenting). Specifically, Presiding Judge Wilson noted that,

> Effective July 1, 2012, the Legislature amended the Act to provide: "notwithstanding any common law or case law to the contrary, this chapter shall not be presumed to favor one party over another and shall not be liberally construed in order to fulfill any beneficent purposes." Miss. Code Ann. § 71-3-1(1) (Supp. 2018); *see* Miss. Gen. Laws 2012, Ch. 522, § 1. Thus, the

principles on which the majority relies have "been legislatively abolished . . . for injuries occurring on or after July 1, 2012." ***Howard Indus. Inc. v. Hardaway***, 191 So. 3d 1257, 1262 n.2 (Miss. Ct. App. 2015), *cert. denied*, 202 So. 3d 208 (Miss. 2016); *see also* ***Cook v. Neshoba Cty. Gen. Hosp.***, 139 So. 3d 131, 133 n.2 (Miss. Ct. App. 2014) (recognizing the same). The majority opinion simply ignores this clear change to the law.

*Jones*, 2019 WL 2605828, at *10 (J. Wilson, P.J., dissenting). Presiding Judge Wilson concluded his dissent by noting that "the outcome of this does not depend on the 2012 amendment to the statute. There is ample evidence to support the Commission's decision no matter how 'liberally' the law is construed in favor of Jones." ***Id.***

¶30. We agree with Presiding Judge Jack Wilson's dissenting opinion. Because Jones alleged that she sustained a work-related injury on March 21, 2015, the Legislature's July 1, 2012 amendment directly applies to today's case. Thus, the Court of Appeals erred by ignoring the Legislature's abundantly clear change to the Workers' Compensation Act.

## CONCLUSION

¶31. The Commission's decision that Jones did not sustain a compensable work-related injury is supported by substantial evidence. Therefore, we reverse the judgment of the Court of Appeals, and we reinstate and affirm the decision of the Commission.

¶32. **THE JUDGMENT OF THE COURT OF APPEALS IS REVERSED. THE DECISION OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION IS REINSTATED AND AFFIRMED.**

**RANDOLPH, C.J., COLEMAN, MAXWELL, BEAM AND ISHEE, JJ., CONCUR. KITCHENS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY KING, P.J., AND GRIFFIS, J.**

**KITCHENS, PRESIDING JUSTICE, DISSENTING:**

¶33. Because I would affirm the decision of the Court of Appeals, I respectfully dissent.

13

Angela Jones testified that she injured her back while pushing a medical cart during her shift as a nurse. Jones's testimony was uncontradicted and was corroborated by an eyewitness. The Workers' Compensation Commission erred by discounting this evidence and requiring Jones to provide medical evidence that she had suffered a work-related injury. Although I agree with the majority that the Court of Appeals erred by applying a claimant-favoring standard that has been abolished by the legislature, I would hold that it reached the correct result by reversing the Commission's decision.

¶34.    To prove a claim of disability, a workers' compensation claimant must establish by a preponderance of the evidence "(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the death or claimed disability." ***Hardin's Bakeries v. Dependent of Harrell***, 566 So. 2d 1261, 1264 (Miss. 1990) (citing Miss. Code Ann. (1972) § 71-3-3; Miss Code Ann. (1972) § 71-3-7). The Commission was not tasked with deciding whether Jones had proved disability but only with deciding whether she had sustained a compensable work-related injury. The definition of injury is codified in Mississippi Code Section 71-3-3(b) which provides, in pertinent part, that

> "Injury" means accidental injury or accidental death arising out of and in the course of employment without regard to fault which results from an untoward event or events, if contributed to or aggravated or accelerated by the employment in a significant manner. Untoward event includes events causing unexpected results. An untoward event or events shall not be presumed to have arisen out of and in the course of employment, except in the case of an employee found dead in the course of employment.

Miss. Code. Ann. § 71-3-3(b) (Rev. 2011).

¶35.    Angela Jones testified that, near the end of her twelve-hour Friday night shift at the

hospital, she was pushing a medical cart when she felt a "pop" in her right lower back, followed by a burning sensation that traveled from her right thigh to her right knee. Jones testified that her direct supervisor, Teresa Blanton, was at a desk located five to ten feet away. Jones asked Blanton whether she had heard a "pop," but Blanton said no. Blanton did testify that Jones appeared to be in pain because she was clutching her lower back, and she walked with a limp for the rest of her shift. Blanton testified that she asked Jones whether she needed to go to the emergency room, but Jones declined. Jones testified that she was not sure what had happened. She went home and, because the pain had not resolved, she saw her primary care doctor on Monday morning. That doctor's visit was the first step in Jones's extensive medical treatment for a debilitating back problem that caused her to miss work on a regular basis for the first time in her twelve-year career as a nurse at the hospital.

¶36. The same day as her doctor's visit, Jones emailed another supervisor, Jamie Hill, and reported that she had started having leg pain the previous Tuesday but that on Friday her lower back had popped and it was "very painful" with pain traveling from her right hip to her knee. Jones testified that the leg pain she had developed on Tuesday was from a heart condition about which she had routinely kept her supervisor informed. Jones also testified that she had a history of lower back pain attributable to a gynecological condition. In her email to Hill, Jones wrote that "this . . . leg problem is post my back hurting and a 'pop' in my lower back last week." The timing of Jones's email to Hill and her description of having experienced a "pop" in her back on Friday further corroborated Jones's testimony and that of Blanton.

¶37. In finding that Jones had not sustained a work-related injury on Friday, March 21,

15

2015, the Commission discounted the testimony of Jones and that of an eyewitness, Blanton. It also disregarded the evidence of Jones's email to Hill reporting the "pop" in her back and her leg pain. Further, it discounted the fact that Jones's series of doctor's visits for the back problem began with her visit to her primary care physician on March 23, 2015, two days after the alleged incident at work. Evidently, the Commission believed that Jones had lied about having hurt her back while pushing the medical cart. To reach that conclusion, the Commission relied on Jones's failure to report an injury to her employer until October 2015 or to her physicians until June 2015 and on Jones's having denied an accident or injury on patient questionnaires. The Commission also found Jones not credible because, as a nurse, she should have known that she had been injured.

¶38.    In holding that the Commission's rejection of Jones and Blanton's uncontradicted testimony was arbitrary and capricious, the Court of Appeals recited the well-established rules that

> A claimant's testimony generally ought to be accepted as true unless that testimony is disputed or so unreasonable as to be unbelievable. ***Waffle House v. Allam***, 976 So. 2d 919, 921 (¶ 10) (Miss. Ct. App. 2007). Our Supreme Court has held that evidence not affirmatively contradicted and not "inherently improbable, incredible, or unreasonable" cannot be arbitrarily and capriciously discarded. ***Morris v. Lansdell's Frame Co.***, 547 So. 2d 782, 785 (¶ 5) (Miss. 1989). Further, unless shown to be untrustworthy, the uncontradicted evidence is to be taken as conclusive and binding. ***Id.*** This holds true even for testimony of an interested party. ***Id.***

***Jones v. Miss. Baptist Health Sys. Inc.***, No. 2018-WC-00930-COA, 2019 WL 2605828, at *3 (Miss. Ct. App. June 25, 2019). In this case, not only was the claimant's testimony uncontradicted, it was supported by testimony of a disinterested eyewitness. I agree with the Court of Appeals that the Commission arbitrarily and capriciously rejected this evidence

16

supporting the occurrence of a work-related injury.

¶39. I find further that the Commission erred by finding that Jones's failure to report an injury to her treating physicians until June 2015 and to her employer until October 2015 cast doubt the evidence that she hurt her back while pushing a medical cart on March 21, 2015. The Commission's reasoning rested on its assumption that, if the incident had occurred as described, then Jones, a nurse, should have understood that she had been injured. But the Commission misapprehended that the definition of a compensable injury for workers' compensation purposes is a legal definition provided by statute, not a medical definition within the expertise of a nurse. The Commission was arbitrary and capricious for discounting Jones's credibility on that basis. As the Court of Appeals pointed out, "[t]he fact that Jones did not identify her pain as an 'injury' does not contradict her testimony that she was injured—and certainly not [Blanton's] testimony that she was visibly limping that night." *Jones*, 2019 WL 2605828, at *4.

¶40. The Commission also erred by requiring Jones to put forth medical evidence that she had sustained a work-related injury.

> [E]vidence of an accident followed by disabling pain and the absence of evidence as to the cause of the pain from objective medical findings has been sufficient as a basis for compensation in the absence of circumstances tending to show malingering or to indicate the claimant's testimony as to pain is not inherently improbable, incredible or unreasonable, or that the testimony is untrustworthy.

*Morris v. Lansdell's Frame Co.*, 547 So. 2d 782, 785 (Miss. 1989) (citing *Myles v. Rockwell Int'l*, 445 So. 2d 528 (Miss. 1983)). Jones's medical records did not contradict her assertion that her pain was caused or exacerbated by the medical cart incident. The notes of Dr. Dodd

17

and Dr. Woodall indicated that Jones had a history of back pain that had become more acute around the time of the event. Although Dr. Amundson initially suspected that Jones's pain was caused by a nerve impingement condition related to obesity, Jones's MRI revealed disc protrusions at multiple levels in her lumbar spine. Dr. Woodall opined that he could not say to a reasonable degree of medical probability that Jones's condition had been caused by a work injury, but he testified that it would have been difficult to diagnose a work-related injury because he had not treated Jones immediately after the incident. Further, he testified that Jones's pain had been exacerbated by her work as a nurse. "[W]hen the employment . . . aggravate[d], accelerate[d], or contribute[d] to the injury," the injury is compensable. *Chapman v. Hanson Scale Co.*, 495 So. 2d 1357, 1360 (Miss. 1986). That means that, even if Jones's experience with the medical cart merely caused a flare-up of some preexisting condition, her injury was compensable.

¶41. In conclusion, because I would hold that the decision of the Commission was unsupported by substantial evidence and was arbitrary and capricious, I would affirm the decision of the Court of Appeals that reversed the Commission's decision and remanded for further proceedings.

**KING, P.J., AND GRIFFIS, J., JOIN THIS OPINION.**

18